**Archie P. SHERAR, Appellant,**

v.

**Joseph M. CULLEN, District Director Internal Revenue Service, et al., Appellees.**

**No. 71–1558.**

United States Court of Appeals, Ninth Circuit.

July 3, 1973.

Rehearing Denied Aug. 13, 1973.

Archie P. Sherar pro se.

Stephen F. Eilperin (argued), Dept. of Justice, Washington, D. C., L. Patrick Gray, III, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., James L. Browning, Jr., U. S. Atty., San Francisco, Cal., Walter H. Fleischer, Thomas J. Press, Dept. of Justice, Washington, D. C., for appellees.

## OPINION

Before ELY and KILKENNY, Circuit Judges, and SKOPIL,* District Judge.

ELY, Circuit Judge:

Appellant Sherar was discharged from his position as an Internal Revenue Service field agent following his refusal to furnish records for a personal tax audit. After fully exhausting his administrative remedies, Sherar filed this action in the United States District Court seeking restoration of his government position together with the back pay and other benefits lost because of the discharge. The District Court granted the appellees' motion for summary judgment, and this appeal followed.

Sherar contends that dismissal from government service, based solely upon a refusal to submit to an allegedly unwarranted and unreasonable audit request, constitutes a penalty wrongfully imposed upon the exercise of fourth amendment rights. He also argues that the Internal Revenue Service was particularly anxious to see him dismissed because he had allegedly given a Senate Subcommittee information that would later be used in public hearings to the embarrassment of the Service. The Government, to the contrary, argues that appellant's dismissal followed substantial compliance with applicable procedures, that dismissal is a matter solely within executive discretion, that the termination was not arbitrary or capricious, and that Sherar's claim that the requested audit was unreasonable under the Fourth Amendment is wholly without merit.

The District Court did not reach appellant's fourth amendment contentions, ruling, instead, that:

" . . . the scope of review in the District Court of this type of administrative proceeding is limited, probably limited as you can get, to the determination of the existence of past due process and a substantial basis for the results of the procedure which is employed in connection with the exercise of discretion."

We disagree.

In See v. Seattle, 387 U.S. 541, 87 S. Ct. 1737, 18 L.Ed.2d 943 (1967), the Supreme Court reversed appellant's conviction for refusing to permit a representative of the city fire department to enter and inspect his locked commercial warehouse without a warrant and without probable cause to believe that a violation of any municipal ordinance had occurred therein. The Court held that:

"(W)hile the demand to inspect may be issued by the agency, in the form of an administrative subpoena, it may not be made and enforced by the inspector in the field, and the subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply."

* Honorable Otto R. Skopil, United States District Judge, Portland, Oregon, sitting by designation.

*Id.* at 544, 545, 87 S.Ct. at 1740. *Compare* Wyman v. James, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971) (holding that where welfare benefits were terminated because the recipient refused to be interviewed in her home, no search under the Fourth Amendment was involved, that even if it were a search it was not unreasonable, and that even if there were an unreasonable search, the welfare recipient had waived the right to object by accepting benefits).

More specifically, in Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), the Court held that when a challenge to an administrative summons for a tax audit is "rejected by the hearing examiner and the witness still refuse(s) to testify or produce, the examiner is given no power to enforce compliance or to impose sanctions for noncompliance." *Id.* at 445, 84 S.Ct. at 512. Instead, the Court ruled, if the Secretary of the Treasury insists on enforcing the summons, he must proceed under 26 U.S.C. § 7402(b), which grants jurisdiction to the District Courts of the United States "by appropriate process to compel such attendance, testimony, or production of books, papers, or other data." *Id.*

Thus, contrary to the administrative procedure followed in Sherar's case, under § 7402(b) the taxpayer is afforded the complete protection of a judicial determination based upon adversary proceedings in which any of his challenges to the summons can be fully aired. "In such a proceeding only a refusal to comply with an order of the district judge subjects the witness to contempt proceedings." 375 U.S. at 446, 84 S.Ct. at 512. Furthermore, the governmental interest in conducting a reasonable tax audit is also protected because the court, based upon its hearing, has full power to determine if the administrative summons should be enforced.

█ The *See* and *Reisman* decisions, and the statutory procedures of § 7402(b), reflect the obvious concern that there be no sanction or penalty imposed upon one because of his exercise of constitutional rights. In Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), for example, the Supreme Court held that an attorney could not be disbarred solely because he claimed his privilege against self-incrimination in refusing to provide records and testimony for an investigation into his alleged professional misconduct. "In this context 'penalty' is not restricted to fine or imprisonment. It means, as we said in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'" *Id.* at 515, 87 S.Ct. at 628. In Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), a companion case to *Spevack*, police officers were convicted in a state court of conspiring to obstruct justice. During their trial, the prosecution was allowed to introduce inculpatory statements taken by investigators after the officers had been advised that refusal to give answers would lead to discharge from their positions. The Supreme Court reversed the convictions, holding that "The choice given petitioners was either to forfeit their jobs or to incriminate themselves. The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent." *Id.* at 497, 87 S.Ct. at 618. *See* Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886) (a statute offering the owner of goods in a forfeiture action an election between producing a document or forfeiture of the goods at issue was held to be a form of compulsion in violation of both the Fourth and Fifth Amendments); Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) (a person has the right "to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence"); Sanitation Men v. Sanitation Comm'r., 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968) (public employees, like all other persons, are en-

titled to the benefit of the constitutional privilege against self-incrimination, and they may not be faced with proceedings which present them with a choice between surrendering their constitutional rights or their jobs); Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L. Ed.2d 1082 (1968) ("the mandate of the great privilege against self-incrimination does not tolerate the attempt, regardless of its ultimate effectiveness, to coerce a waiver of the immunity it confers on penalty of the loss of employment").

 In the present case, the Internal Revenue Service placed Sherar in the untenable position of having to decide whether to submit to an allegedly unreasonable and unwarranted tax examination, or, should he refuse, to suffer the penalty of dismissal. This was clearly a penalty that infringed upon the constitutional right to be free from unreasonable searches because, as a practical matter, the only manner by which a taxpayer can prevent an unreasonable search is to withhold his records pending judicial determination in enforcement proceedings. *Cf.* Elliott v. American Mfg. Co., 138 F.2d 678 (5th Cir. 1943) ("The remedy against forced improper disclosure, and the opportunity for testing its propriety is simply to refuse to disclose and to have the District Court rule upon the matter in enforcement proceedings"). If the rule were otherwise, the right to be free from unreasonable searches would not exist except at the discretion of the tax collector.

In so holding, we do not reach the question of whether Sherar is correct in his contention that the audit was, as a matter of fact, an unreasonable and unwarranted demand. We hold only that in the absence of prior judicial determination of that question, his discharge was unwarranted. Reisman v. Caplin, *supra.*

Since Sherar submitted the requested tax records to the auditor following his discharge, the required enforcement proceedings under § 7402(b) would now be moot. Accordingly, the cause is remanded to the District Court, with directions to order Sherar reinstated to his former position within the Internal Revenue Service. The District Court will also determine the amount of back pay and benefits, if any, which are due to Sherar because of his illegal discharge.

Reversed and remanded, with directions.