SHERMAN S. WILCOX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wilcox v. Commissioner
Docket Nos. 15228-82, 19852-82.
United States Tax Court
T.C. Memo 1985-243; 1985 Tax Ct. Memo LEXIS 384; 49 T.C.M. (CCH) 1525; T.C.M. (RIA) 85243; May 23, 1985. Sherman S. Wilcox, pro se. Pamela R. Piland, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent determined the following deficiencies and additions to the tax for petitioner in these consolidated cases involving the taxable years 1978, 1979 and 1980: Additions to the Tax
Taxable
Year
Deficiency
Sec. 6653(b) [1]
Sec. 6653(a)
Sec. 6651(a)
Sec. 6654(a)
1978
$12,809.00
$6,404.00
1979
7,346.25
367.31
1,836.56
308.54
1980
3,483.00
174.15
870.75
222.91
The primary issue presented in these consolidated cases is petitioner's claim that he is relieved from income tax liability for the years in issue because *386 of his association or contributions to his "Life Science Church" (hereinafter "church"). The following specific issues are presented for our consideration: (1) Whether petitioner is entitled to any charitable deductions for his 1978 taxable year; (2) Whether petitioner failed to report $214 of interest income for his 1978 taxable year; (3) Whether petitioner is liable for the section 6653(b) (fraud) addition to tax for his 1978 taxable year; (4) Whether petitioner received and failed to report income from wages in the amounts of $29,575 and $18,946 for the taxable years 1979 and 1980, respectively; (5) Whether petitioner is liable for the section 6653(a) (negligence) addition to tax for the taxable years 1979 and 1980; (6) Whether petitioner is liable for the section 6653(a) (failure to file) addition to tax for the taxable years 1979 and 1980; (7) Whether petitioner is liable for the section 6654(a) (failure to pay estimated tax) addition to tax for the taxable years 1979 and 1980; (8) Whether damages should be awarded to the United States for petitioner instituting or maintaining these proceedings primarily for delay or for frivolous or groundless positions; (9) *387 Whether this Court has jurisdiction over petitioner, which petitioner has raised by his "Motion to dismiss for want of Equity and Jurisdiction." Some of the facts have been stipulated by the parties and, for convenience, the Findings of Fact and Opinion are combined. Petitioner resided in San Bernardino, California, at the time he filed his petitions. The facts in this case and the positions and arguments offered by petitioner are strikingly similar to those in numerous other cases that have been heard by this Court. Much of petitioner's presentation appears derivative of "patented" material that has been developed by protester and tax avoidance groups. Petitioner's "Motion to dismiss for want of Equity and Jurisdiction"
The first example of petitioner's use of "patented" anti-tax material is to be found in his jurisdictional motion. A few weeks prior to the trial, petitioner filed a "Motion to dismiss for want of Equity and Jurisdiction." Petitioner alleged that jurisdiction over him had been acquired through "fraud *388 and deception" because, as further alleged by petitioner, respondent did not comply with the Privacy Act (5 U.S.C. sec. 552a (e)(3)(A)), Treasury Reg. 31 C.F.R. 1.35(b)(2), and the Paperwork Reduction Act of 1980. More specifically, petitioner has alleged that respondent failed to include section 6012 in the Federal Register notice concerning the Privacy Act and in procedures concerning the Paperwork Reduction Act. Petitioner further alleged that the Internal Revenue Service Form 1040 and W-4 certificate are not in compliance with the "FEDERAL REGISTER ACT, 44 USC CHAPTER 15 § 1505," the Freedom of Information Act, the Privacy Act of 1974, and the Paperwork Reduction Act of 1980. Petitioner's allegations are substantially identical to those made in the case of Billman v. Commissioner,83 T.C. 534 (1984). As in Billman, petitioner herein has attempted to avoid tax by means of his relationship with a "church." Petitioner's claims and contentions concerning our jurisdiction are, for the most part, frivolous. Our holding in Billman more than adequately deals with petitioner's contentions that this Court lacks jurisdiction *389 and, accordingly, petitioner's motion to dismiss is denied. Effect of Petitioner's "Church" and Vow of Poverty on his 1978, 1979, and 1980 Tax Liabilities
Petitioner filed his 1978 Federal income tax return reflecting $40,134 in income from wages and claiming a $78,078 charitable contribution, thereby reflecting no taxable income. The alleged $78,078 contribution was reported on line 21a of Schedule A of petitioner's 1978 Federal income tax return, which is specifically designated for "Cash contributions for which you have receipts, cancelled checks or other written evidence." Petitioner attached an "Affidavit of Poverty" to his 1978 return reciting that all of his possessions were gifted to the "Church or Order" and he also submitted as evidence in this case copies of two real property deeds reflecting transfers over to the "church." The deeds and affidavit were all executed in 1977 and petitioner presented no evidence of any contributions during his 1978 taxable year. Petitioner has not filed Federal income tax returns for the taxable years 1979 and 1980. The facts concerning petitioner's "church" are, again, strikingly similar to other cases decided by this Court. *390 In particular, see Stephenson v. Commissioner,79 T.C. 995 (1982), affd. 748 F.2d 331 (6th Cir. 1984). Petitioner had been an electrician for nearly 40 years and was a member of Local 477 of the International Brotherhood of Electrical Workers during the taxable years 1978, 1979, and 1980. Although requested to do so by the Court, petitioner provided virtually no testimony or other evidence about the operation of his "church." The little testimony provided was nebulous and inconsequential. Petitioner testified that he was working construction in Alaska in 1976 and 1977 and before that "[he] had never been around dope, been around drinking * * *." Petitioner further testified that he could speak construction worker's language and "I know nobody likes to hear hellfire and brimstone, but when you get one on one and try to straighten a guy out or two, is the reason I started the Church in the first place." Concerning the organization of petitioner's "church," the evidence merely consisted of pro forma documents. Petitioner, on November 1, 1977, executed a preprinted Life Science Church form charter, which had been executed on October 18, 1977, by *391 William Drexler as Bishop and Dean of Life Science College. Petitioner's son, Michael S. Wilcox, and his housekeeper, Jewell Wellard, signed the Charter as trustees. Petitioner signed his name as follows: "Rev. Sherman S. Wilcox D.D." On November 5, 1977, petitioner signed a preprinted form "Affidavit [vow] of Poverty," which was recorded on November 29, 1977, with the San Bernardino County Clerk's office. The "Affidavit [vow] of Proverty," in essence, states that all of petitioner's possessions and income are "gifted" or otherwise became the property of the "church" regardless of whether they continued to appear in petitioner's name and that "Outside employment renumberation [sic] (when directed by the church or order) is not personal income, but rather income/gift to the church/order * * *." Petitioner attached a copy of this "Affidavit [vow] of Poverty" to his 1977 and 1978 Federal income tax returns. On December 2, 1977, petitioner executed and caused to be recorded two Grant Deeds (one for his residence and another for some vacant land) reflecting a transfer of real property from petitioner as a "widower" to petitioner, as a "minister" and his "church." Petitioner, *392 during 1977 and the years in issue, worked as an electrician for several contractors and was paid wages by cash or check as follows: Name of Payor
1977
1978
1979
1980
Fluor Alaska, Inc.
$25,910.06
Rogers Electric Divi-
sion of Newberry
Constructors Inc.
30,869.44
Johnson-Peltier, Inc.
$17,768.00
Whittaker Electric Co.
4,249.30
$6,034.60
Gregg Electric, Inc.
2,200.00
Paige Electric Co.
11,192.80
L.K. Comstock & Co.,
Inc.
$39,404.01
2,480.42
Rini Electric, Inc.
206.40
Jackson Electric Co.,
Inc.
524.00
Total Wages
$56,779.50
[2] $40,134.41
$26,697.72
$17,227.40
When paid by check, checks were made payable to petitioner. All employment records were in the name of petitioner. On November 18, 1978, petitioner submitted a Form W-4 to an employer claiming one exemption for purposes of withholding taxes. On all other Forms W-4 that petitioner submitted to the employers shown above (during the years in issue), petitioner claimed to be exempt from withholding *393 and no taxes were withheld from his wages. During 1977, petitioner sought exemption from self-employment taxes from the then-named Department of Health, Education, and Welfare and from the Internal Revenue Service on the basis that his religious beliefs caused him to be conscientiously opposed to public insurance. Petitioner's requests for "resignation" or exemption from self-employment and/or social security tax were denied by both agencies. For 1977, petitioner signed and filed a Form 1040 and attached Forms W-2 which reflected $56,779.50 in wages. Petitioner sought a refund of all withheld tax due to his claimed exemption from tax based upon his "vow of poverty." No amounts were filled in on the various lines of the 1977 return, except for the various withholding tax payments and the claimed refund of same. For 1978, petitioner signed and filed a Form 1040 and attached Forms W-2 which reflected $40,134 in wages. Petitioner's 1978 return reflected the $40,134 as gross income from wages and also included a $78,078 claimed contribution deduction. As with the 1977 return, [3] a "vow of poverty" form was attached to the 1978 return. No other income or deductions were reflected on *394 petitioner's 1978 return. Petitioner did not file Federal income tax returns for the taxable years 1979 and 1980. Up until sometime late in 1977, petitioner maintained a personal checking account, with his son as a second signatory, at the Highland-Arrowhead branch of the Bank of America. That account was used to pay petitioner's personal day-to-day expenses. In 1977 petitioner opened a savings account in the "church's" name with the same bank. During late 1977 or early 1978, petitioner closed his personal checking account and opened a checking account in the "church's" name at the same bank. Petitioner's payroll checks were the primary source of funds deposited into the checking account during 1977. For 1978, 1979, and 1980, petitioner's personal living expenses were paid out of the "church's" bank account. Petitioner has not shown a new or different source *395 of deposits into the "church's" accounts other than the wages he received as an electrician. In essence, nothing changed in the handling of petitioner's personal finances other than the change of the name in which the bank accounts were maintained during the year in question. Other than petitioner's pro forma filling-in of a "church" charter and deed blanks and his renaming bank accounts, nothing changed in petitioner's modus operandi during the years 1977 through 1980. Throughout 1978, 1979 and 1980, with one exception, petitioner submitted Forms W-4 to various employers claiming that petitioner was exempt from the withholding of tax from his wages. In this manner petitioner changed his approach from claiming "charitable deductions" in excess of his reported wages in 1978 to using an "exempt" withholding status to avoid filing a return to claim a refund of his prepayment credits. Even though petitioner has offered forms claiming to be exempt from tax and/or attempting to establish a connection with a Life Science Church, in one of his pleadings he alleges, concerning his failure to file a return: (1) That there was no Internal Revenue Code section requiring him to pay tax; (2) *396 that he received nothing of tangible value that qualified as income; (3) that he did not volunteer to self-assess himself; (4) that he was not in receipt of gain or profit; and (5) that he enjoyed no grant of privilege or franchise. Petitioner's motivation to avoid or evade tax has led him to the dogmatic and legally unsuccessful postulates of tax protest. On these facts, we must first consider whether amounts paid to petitioner for work as an electrician were paid to him as an agent of his "church." Concerning the taxable years 1979 and 1980, petitioner's personal use of all property and funds transferred to his "church" coupled with the lack of any sacerdotal or charitable activity clearly establishes that the "church" was not a separate and distinct principal. McGahen v. Commissioner,76 T.C. 468, 479 (1981), affd. without published opinion 720 F.2d 664 (3rd Cir. 1983); Stephenson v. Commissioner,79 T.C. 995 (1982), affd. 748 F.2d 331 (6th Cir., 1984). Although the "church" charter recites that "church" receipts should not issue to the benefit of private individuals, petitioner testified that nothing changed in the *397 manner that he paid his personal expenses other than the account name upon which the checks were drawn. Checks were drawn and expenses were paid for such items as food, transportation, clothing, insurance premiums, automobile expenses and union dues to the electrical workers union. In sum and substance, petitioner deposited part or all of his wages into the "church's" account and paid his personal living expenses from the same account. The record is void of any evidence that the "church" had a congregation, members other than petitioner, worship services, liturgy or that petitioner who was its self-designated trustee and minister ever performed any sacramental services. The only testimony provided related to petitioner's belief that he could communicate with construction workers, but no charitable activity was described for the years before the Court. We find petitioner's evidence to be unconvincing. As in McGahen v. Commissioner,supra at 480, and repeated in Stephenson v. Commissioner,supra at 1001, the "church," by its very nature, merges the secular with the sacerdotal and must be seen as an impermissible attempt "to transmute *398 the commercial into the ecclesiastical and thus avoid the congressional separation of taxable individual income and tax-exempt religious order income." Accordingly, the wages earned by petitioner as an electrician were income to him and reportable. On his 1978 tax return, petitioner reported $40,134 in taxable wages and claimed a charitable contribution deduction of $78,078. Section 170 allows deductions for charitable contributions where taxpayers can prove that the contributions were made to a qualified tax-exempt organization and that no part of the net earnings of the qualified tax-exempt organization inured to the taxpayers' personal benefit. Davis v. Commissioner,81 T.C. 806 (1983), appeal filed (9th Cir., June 25, 1984); Miedaner v. Commissioner,81 T.C. 272 (1983); McGahen v. Commissioner,supra.Petitioner contends that he made contributions to his "church," which he considers to be a tax-exempt organization. Respondent's position is that petitioner has not proven the amount of the contribution and that petitioner received the personal use of the funds allegedly contributed. Petitioner has not presented any evidence *399 of the value or the amounts or type of property contributed, other than the two deeds to realty and the vow of poverty documents reciting the transfer of property. Further, the deeds and vow of poverty show the transfer in 1977, a taxable year not currently before this Court. Petitioner has not provided evidence showing that his "church" was a qualified tax-exempt organization. Other than the "charter" granted to petitioner by William Drexler as Bishop and Dean of Life Science College, there is nothing in the record to show that the "church" was organized or operated so as to qualify as a religious or charitable institution within the meaning of section 170(c)(2). Petitioner has not provided information on the size, frequency of meeting or existence of a congregation. Finally, the record reflects that all of petitioner's personal expenses were paid out of the "church's" bank account. Accordingly, we hold that petitioner is not entitled to any charitable deduction for the taxable year 1978. Omission of Interest Income in 1978
Petitioner did not offer an explanation concerning or any evidence pertaining to respondent's determination that he failed to report $214 of interest *400 income for 1978. Accordingly, we hold that petitioner failed to report $214 of interest income during 1978. Welch v. Helvering,290 U.S. 111 (1933); Rule 142. [4]
Additions to the Tax
Respondent determined, for the taxable year 1978, that all or part of petitioner's underpayment of tax was due to fraud within the meaning of section 6653(b). We have found that petitioner is not entitled to the claimed contributions and that he failed to report $214 in interest income. Respondent bears the burden of proving fraud. Sec. 7454(a); Rule 142(b). It must be shown that petitioner had an intent to evade a tax he believed to be owing. Webb v. Commissioner,394 F.2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. The existence of fraud is a question of fact to be considered in light of the entire record, Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978), and may be inferred from circumstantial evidence. Powell v. Granquist,252 F.2d 56, 61 (9th Cir. 1958); *401 Gajewski v. Commissioner,supra.
The gist of petitioner's position on brief concerning the fraud issue is that "there can be no penalty imposed on one because of his exercise of constitutional rights," citing Sherar v. Cullen481 F.2d 945 (9th Cir. 1973). Sherar presents a situation where an Internal Revenue agent was discharged from his Government position for refusing to submit records in connection with the audit of the employee-agent's taxes. Comparing Mr. Sherar's situation with a taxpayer who had been served a summons under section 7402, the Circuit Court found that Mr. Sherar's discharge was unwarranted. Sherar v. Cullen,supra at 948. It is unnecessary to express our agreement with the principle expressed in Sherar because we are unable to apply similar principles to petitioner's baseless claims that the taxing statutes are unconstitutional or that the participation in the tax system is wholly voluntary. In addition to petitioner's protester-type argument, he asserts, and has reported to the Internal Revenue Service for 1978, that he was either exempt from tax because of his relationship with his "church" *402 or that his claimed contribution to his "church" reduces to zero any income he may have earned. Respondent argues that petitioner's "vow of poverty" and establishment of his "church" were merely to evade the payment of tax. As stated in Stephenson v. Commissioner,supra,79 T.C. at 1008 (1982): "It is hard to believe any individual * * * could honestly believe that he could escape liability for income taxation and still enjoy unfettered use of all the income he received by so simple a step as the creation of the 'church.'" Prior to 1977, petitioner, an electrician for about 35 years, filed proper income tax returns. Included in the record of this case is a copy of petitioner's 1976 Federal income tax return. In that return petitioner reported $59,163 in wages and $1,037 in interest and dividend income. Amongst other deductions, petitioner claimed as deductions for contributions $38 for "Misc. Organized Charities" and $100 for "House of Worship." Late into 1977, petitioner executed a preprinted "church kit" consisting of a vow of poverty and charter. The documents are printed forms ostensibly received from the Life Science Church requiring petitioner to merely *403 fill in his name and the date. Additionally, on December 2, 1977, petitioner executed and recorded two deeds to real property to the "Life Science Church of Blake St., Sherman S. Wilcox, Minister." The deeds concerned petitioner's residence and some vacant land. For 1977, petitioner submitted a basically blank return advising of and attaching a vow of poverty and claiming a refund of all withheld taxes. Two Forms W-2 reflecting $56,779.50 in wages and $18,426.79 in withheld Federal income tax were attached. The Internal Revenue Service issued the refund to petitioner, who listed himself as "Reverend Sherman S. Wilcox" on the return. For 1978, petitioner changed his modus operandi. He reported $40,134 in wages and claimed a $78,078 deduction for contributions. A copy of the same vow of poverty was attached to the 1978 return. The amount of Federal income tax withheld for 1978 was drastically reduced to $3,021, for which petitioner requested a refund. The reduction of withheld tax is attributable to the filing of Forms W-4 with employers in which petitioner claimed exemptions from tax. For 1979 and 1980, petitioner did not file a return because he was successful in causing *404 all withholding to cease by the filing of exempt Forms W-4 with employers. The filing of false W-4 forms to stop withholding of Federal tax has been found as indicative of an attempt to evade the payment of income tax. Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983); Habersham-Bey v. Commissioner,78 T.C. 304, 313-314 (1982). Petitioner's pattern of conduct reflects his intent to evade the payment of tax. Spies v. United States,317 U.S. 492 (1943). Petitioner has decided not to pay any more tax following the filing of his 1976 return. By means of a "church kit" he created the subterfuge of exemption from tax which he stated in a return to his government and in Forms W-4 submitted to his employers. With nothing more than subscribing to a couple of pro forma documents, he purported to be a minister of a church. Petitioner, although offered the opportunity and requested to do so, presented no evidence of a congregation, sacerdotal activity or other operational aspects of a religious organization. Moreover, there were no real changes in petitioner's financial situation in connection with the creation of his "church" other than *405 a change in the name of the bank account to the "church's" name. Otherwise, as petitioner testified, nothing changed--all of his personal expenses, including housing, food, clothing, insurance, auto expenses, union dues, etc., were paid from the "church" account. He maintained full dominion and control over the account and the funds inured to petitioner's sole benefit. There is no evidence of any charitable activity during 1978. Although relatively small in amount, petitioner failed to report $214 of interest income for 1978. When considered within the entire pattern, this unexplained omission has probative significance. Petitioner, on brief, comments little about his "church" and instead puts forth the baseless and overused arguments that many tax protesters have unsuccessfully advanced before this and other courts. Petitioner poses a riddle centered about the voluntary nature of the tax system. The conclusion he reaches is that one may not be forced to self-assess since the system is voluntary. Petitioner has revealed his true intent to evade tax by these baseless claims. His choice to hide behind the facade of a religious organization to accomplish the evasion is, coupled *406 with the other facts in this record, fraudulent. Petitioner's actions are most disruptive of the system that guarantees constitutional freedom of religion. Petitioner's attempts to use this constitutional guarantee as a sword to evade payment of tax, rather than a shield permitting the free exercise of his religion. Respondent determine additions to tax for 1979 and 1980 pursuant to sections 6653(a) (negligence), 6651(a) (failure to file) and 6654(a) (failure to pay estimated tax). The burden of proof with respect to these additions to the tax is upon petitioner. Welch v. Helvering,290 U.S. 111 (1933); Rule 142. Petitioner has not presented any evidence to carry his burden of showing that the additions are not applicable. As previously discussed, the wages earned by petitioner were reportable by him and his failure to do so for 1979 and 1980 would, at very least, support the addition to tax for negligence and failure to file. Damages Under Section 6673
Petitioner's consolidated cases present different aspects of the same issue concerning petitioner's relationship to his "church." The only major difference is that petitioner filed a return in docket *407 No. 15228-82 while petitioner did not file returns in docket No. 19852-82. These two cases, representing three taxable years, are the second and third cases brought before this Court by petitioner. He first filed a petition in docket No. 8649-81, concerning an income tax deficiency and addition to tax under section 6653(b) for his 1977 taxable year. That case was dismissed by an order of this Court, dated July 2, 1984, as a sanction for failing to comply with an order of this Court concerning discovery and case preparation. Respondent seeks $5,000 damages with respect to docket No. 19852-82 involving petitioner's 1979 and 1980 tax years. The record reflects the inherent inadequacy of petitioner's proof and the baseless and frivolous nature of his position. Section 6673 provides for damages to be awarded to the United States in an amount not in excess of $5,000 whenever it appears that a taxpayer has filed or maintained the petition primarily for delay or where the taxpayer's position is frivolous or groundless. As we have recently stated, this Court has been faced with numerous cases, such as this one, concerning attempts by taxpayers to use the "pretext of a church to avoid *408 paying their fair share of taxes * * * [and to] resort to the courts in a shameless attempt to vindicate themselves." Miedaner v. Commissioner,81 T.C. 272, 282 (1983). Petitioner has abused the process of this Court and wasted its resources and those of respondent. The record in these cases causes us to find $5,000 in damages in docket No. 19852-82. Moreover, we can find no difference in the situation presented by docket No. 15228-82 and, accordingly, we find $5,000 in damages, sua sponte, in docket No. 15228-82. Decisions will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and appropriate to the years in question.↩
2. Petitioner rounded to nearest dollar on his 1978 income tax return to $40,134 and respondent used the rounded amount in the statutory notice.↩
3. It is noted that petitioner also filed a petition with this Court concerning his 1977 taxable year (docket No. 8649-81). That case was dismissed and a decision was entered finding the full income tax portion of the deficiency against petitioner as a sanction for his failure to comply with an order of this Court.↩
4. All rule references are to the Tax Court Rules of Practice and Procedure.↩