**John L. STEPHENSON,**
**Petitioner-Appellant.**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 83–1411.

United States Court of Appeals,
Sixth Circuit.

Submitted Oct. 1, 1984.

Decided Nov. 20, 1984.

Michael G. Parham, Jasper, Ga., for petitioner-appellant.

Kenneth W. Gideon, Chief Counsel, I.R.S., Washington, D.C., Joel Gerber, Acting Chief Counsel, Washington, D.C., Jere-

**332**

my Nowak, Atty., Tax Litigation Div., for respondent-appellee.

Before STEWART,[*] Associate Justice, LIVELY, Chief Judge, and WELLFORD, Circuit Judge.

PER CURIAM.

The Tax Court in this case assessed Civil fraud penalties under I.R.C. § 6653(b) for the tax years 1976 and 1977, and also assessed penalties for underpayments of estimated tax under I.R.C. § 6654 for the latter tax year, against John Lynn Stephenson, a physician, of Chelsea, Michigan. *See Stephenson v. Commissioner*, 79 T.C. 995 (1982). Stephenson worked as a physician employee of the Allegan Medical Clinic, P.C. (the "Clinic"), and was paid wages of $50,692 in 1976 and $32,302 in 1977; he worked also as a physician rendering services to the Chelsea Emergency Physicians, P.C. ("CEP") in 1977 and was paid $44,151 for his medical work.[1]

Petitioner Stephenson paid $500 for and received a charter from the Life Science Church to establish a new branch of that Church. Stephenson then became a "minister" thereof, and at the same time signed a vow of poverty dated December 30, 1976. This vow provided that all his possessions and income became the property of the Allegan Branch of the Life Science Church, with the reversion condition that "if civil government officialdom were to void this act ... by blocking the rightful tax-exempt status and maintenance of the church or order" they would revert back to him.[2] The vow of poverty also provided that "outside employment renumeration [sic] (when directed by the church or order) is not personal income, but rather income/gift to the church/order."

Stephenson listed his occupation in his 1976 income tax return as "member of religious order;" he reported $50,962 from the Clinic as income, and claimed all of it as a deduction by attaching his vow of poverty to the return. Together with this, he attached an application for exemption from tax on a self-employment income form[3] dated December 30, 1976, the same date appearing on the charter and vow of poverty. Stephenson also submitted to the Clinic on January 1, 1977, a Form W–4E, exemption from withholding, certifying that he incurred no federal income tax liability for 1976 and anticipated none in 1977. The following day, the Clinic demanded that Stephenson execute an indemnity agreement in consideration for its acquiescence in taxpayer's request and the elimination of withholding from his pay. When he began to work for CEP, Stephenson was called upon to execute the following Memorandum of Understanding:

> [T]he Corporation does not agree with or support directly or indirectly [taxpayer's] personal activities relating to his own philosophy on government policies or

---

[*] THE HONORABLE POTTER STEWART, Associate Justice (Retired), Supreme Court of the United States, sitting by designation.

[1.] He received checks from CEP payable to John L. Stephenson, M.D., in the amount stated, and also in 1977 personally received a $10,603 profit-sharing plan distribution from the Clinic. In 1978, through a filing of Form 1099R, Stephenson was informed that this distribution was considered to be ordinary income to him.

[2.] The parent Life Science Church by express charter proviso had no claim to Stephenson's possessions or property. The charter itself was not filed of record until July of 1977. The reversion of assets to Stephenson coupled with his ultimate unlimited authority to distribute church assets is not such an "irrevocable commitment which allows us to find it [the church] was operated exclusively for religious ... purposes." *Calvin K. v. Commissioner*, 69 T.C. 770, 772 (1978), *aff'd*, 603 F.2d 211 (2d Cir.) (unpublished), *cert. denied*, 444 U.S. 872, 100 S.Ct. 151, 62 L.Ed.2d 98, *reh'g denied*, 444 U.S. 985, 100 S.Ct. 494, 62 L.Ed.2d 415 (1979).

[3.] Form 4029 stated that he was

> \* \* \* \* \* \*

> ... conscientiously opposed to acceptance of the benefits of any private or public insurance which makes payments in the event of death, disability, old-age, or retirement or makes payments toward the cost of, or provides services for, medical care....

Stephenson, nevertheless, continued to pay for private insurance coverage of various kinds, including the types to which he stated he was conscientiously opposed in both 1976 and 1977.

programs nor his personal religious practices. While the Corporation does respect the Doctors [sic] First Amendment rights, Doctor agrees not to promote the previously mentioned activities within the Corporation's service area and to refrain from any activity which may create an unfavorable impression or be cause of embarrassment for the Corporation in its service area.

At or about the time Stephenson transferred from the Clinic in Allegan to CEP, he and his wife quitclaimed their Allegan residence to Stephenson as trustee for the Life Science Church, and transferred title to his cars to the Church. The real estate was sold in 1977 and the sale proceeds, $49,927, were deposited with the Church bank account. The next month a check for $59,000 was drawn on this account by Stephenson, who utilized it to purchase a Chelsea home. He moved the Church location, explaining "where I went the Church went." Title in the new Chelsea home, however, was taken in the name of Stephenson and his wife. They withdrew from the Church bank account mortgage payments, insurance expenses, and all manner of personal expenses. There was testimony that the Stephenson lifestyle did not change after the date of his vow of poverty and his becoming minister of the Church, which went with him from Allegan to Chelsea. There was no evidence that there were any other members of the "Stephenson branch" of the Life Science Church. Stephenson filed no federal income tax return in 1977.

■ The Tax Court found that documents had been fraudulently backdated to December 30, 1976 in an effort to show establishment of and affiliation with the Church in 1976. We find that there was sufficient evidence in the record to support this finding, and to support the disallow-

ance of Stephenson's attempt to deduct the earnings he received from his medical practice in 1976. These abortive efforts by Stephenson were ample bases, combined with the other actions described, to justify the imposition of the 50% fraud penalty in 1976, which is the only issue before this court on appeal for that year.

■ The Tax Court also held that in 1977 the taxpayer's free and unfettered use of what purported to be church funds, coupled with the church's lack of congregation, regular worship services, liturgy, and creed, as well as the Stephenson's unchanged lifestyle, indicated that the Church had no separate existence; indeed, no real identity except as a sham for tax avoidance purposes. The Tax Court concluded that Stephenson therefore was not an agent of the Life Science Church for tax purposes. The Tax Court also concluded that the Church located in Chelsea,[4] failed to meet the organizational and operational standards for tax exempt status under Section 501(c)(3) of the Internal Revenue Code. Accordingly, the Tax Court assessed the 50% tax fraud penalty and also a penalty for the failure to pay estimated taxes. In effect, these were penalties not only for the actions previously described, but also for the false and wholly unwarranted withholding statement filed by Stephenson in 1977.[5] Again, the only issue before this court in respect to 1977 taxes is the fraud penalty.

We affirm the action of the Tax Court, and we agree with the rationale given for its decision. *See McGahen v. Commissioner,* 76 T.C. 468, 475, 478 (1981):

An individual who turns over his entire annual income to a church is still taxable on that income.

. . . .

A member of a religious order under a vow of poverty is not immune from Fed-

---

4. It should be remembered that Stephenson made no attempt in 1977 even to transfer title in his Chelsea home to the Church or to a separate trustee entity.

5. For the tax year 1977, Stephenson filed a Form W–4E certifying that he was tax exempt

for the tax year 1976. The Tax Court found that Stephenson had in fact fraudulently backdated documents to achieve tax benefits for 1976. Stephenson therefore knew, when filing this Form W–4E, that he was not tax exempt in 1976. This alone is an act of fraud.

eral income tax by reason of his clerical status or his vow of poverty, but is subject to tax to the same extent as any other person on income earned or received in his *individual* capacity. *Kelley v. Commissioner,* 62 T.C. 131 (1974).

The efforts of Stephenson here constituted a transparent attempt "to transmute the commercial into the ecclesiastical and thus avoid the congressional separation of taxable individual income and the tax exempt religious order income." *McGahen,* 76 T.C. at 480. *See also, Riker v. Commissioner,* 244 F.2d 220 (9th Cir.), *cert. denied,* 355 U.S. 839, 78 S.Ct. 50, 2 L.Ed.2d 51 (1957). Both employers here involved engaged Stephenson's medical services personally, not as an agent of a church or church order. The assets of the purported church and its account were fully utilized for family and personal use by Stephenson; as stated by the Tax Court, they "enured to petitioner's benefit." There was therefore no "gift" nor any charitable contribution established by appellant under these circumstances during the pertinent tax periods. *See Basic Bible Church v. Commissioner,* 74 T.C. 846 (1980), *aff'd sub nom. Kile v. Commissioner,* 739 F.2d 265 (7th Cir.1984); *Lynch v. Commissioner,* 41 T.C.M. (CCH) 204 (1980); *Young v. Commissioner,* 41 T.C.M. (CCH) 1069 (1981).

It has not been demonstrated that the Tax Court erred in finding that there was clear and convincing evidence to support the conclusion that Stephenson had "the actual intent to evade tax," and that he was "motivated by a desire to evade taxes." 79 T.C. at 1007. The judgment of the Tax Court is accordingly AFFIRMED in all respects.