GERALD THOMAS LESTER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lester v. Commissioner
Docket No. 10846-83.
United States Tax Court
T.C. Memo 1985-539; 1985 Tax Ct. Memo LEXIS 92; 50 T.C.M. (CCH) 1327; T.C.M. (RIA) 85539; October 22, 1985. Gerald Thomas Lester, pro se. Sylvia G. Lewellyn, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined the following deficiencies in, and additions to, petitioner's Federal income taxes: Additions to Tax
Year
Deficiency
Sec.6651(a) [1]
Sec.6653(a)
Sec.6654(a)
1978
$10,009.00
$500.00
$325.00
1979
14,847.00
$3,712.00
742.00
620.00
1980
17,596.00
4,399.00
880.00
1,123.00
*94 The primary issue in this case is petitioner's claim that he is relieved from income tax liability for the years in issue because of his association with a local chapter of the Universal Life Church called the Church [2] of Holistic Science (Charter #20315) (ULC), and a local chapter of the Life Science Church (LSC). The following specific issues are presented for our consideration: (1) Whether petitioner is liable for tax upon the income of the Jerry Lester Pharmacy for the taxable years 1978, 1979 and 1980 in the amounts of $23,869, $41,683, and $46,329, respectively; (2) Whether petitioner is entitled to a deduction for contributions to his local ULC or LSC for the taxable year 1978 of $5,200; (3) Whether petitioner is liable for self-employment tax for the taxable years 1978, 1979 and 1980 in the amounts of $917, $1,855 and $2,098, respectively; and (4) Whether petitioner is liable for the additions to tax under sections 6651(a), 6653(a) and 6654(a) for the taxable *95 years 1978, 1979 and 1980. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and joint exhibits are incorporated herein by this reference. [3]
Petitioner resided in San Diego, California, at the time he filed his petition in this case.Petitioner filed an individual Federal income tax return for the taxable year 1978 with the Internal Revenue Service Center in Fresno, California. On this return, petitioner described his occupation as minister, he reported $9,897.71 as income, and after itemizing his deductions including $5,200 of charitable contribution, he determined that he was owed a refund of $1,377.32. [4] Petitioner did not file Federal income tax returns or pay taxes for 1979 and 1980. *96 Petitioner is a pharmacist, having received a degree in pharmacy in 1956 from North Dakota State University. He worked as a pharmacist and in other capacities for various employers from 1956 until 1970. In early 1970 petitioner was employed as an inspector for the California State Board of Pharmacy where he remained until he resigned in early 1978. He then worked as a pharmacist at several drug companies on a temporary basis. On July 1, 1978 he purchased in his own name the "Al Bond Pharmacy" in San Diego, California, and operated it under the name "Jerry Lester Pharmacy" (the pharmacy). The pharmacy was not incorporated. During the years in issue petitioner was personally licensed in the State of California as a pharmacist and to operate the pharmacy. Petitioner listed himself as the individual owner of the pharmacy on numerous state and local license, tax and registration forms filed during the years 1978-1980. Petitioner was employed as a pharmacist by the pharmacy during the years here involved and had a salary draw of $500 per month. On February 8, 1978, petitioner was granted a Charter by the ULC of Modesto, California. Petitioner called his local chapter of ULC, *97 The Church of Holistic Science (ULC). Petitioner testified that he also received a charter from the Life Science Church (LSC) in 1978. Petitioner received these charters after he mailed a completed application and a fee to each of the churches. Petitioner's testimony about his church's congregation and its activities was vague and incomplete. [5] He testified that he had performed several marriages. He stated that meetings were held on a weekly basis on the beach with six or seven people attending. He said that during the meetings the congregation would "thank that we're alive" and "decide what we're going to do for the people tomorrow." Petitioner did not have a membership list and stated that there was no formal procedure for individuals to join the church. Petitioner testified that the ULC purchased the pharmacy. When questioned about the source of the monies used in the purchase, petitioner said he supplied the money while the rest of the congregation provided prayers. Petitioner *98 stated that he transferred all of his other assets, including his home, to the LSC in 1978 pursuant to a vow of poverty. These assets were later transferred from the LSC to the ULC, petitioner stated. Then in 1981, petitioner stated he transferred the pharmacy to North Dakota State University by quit-claim deed. Petitioner did not present any documentary evidence or other corroboration that these transfers occurred. During the years at issue, petitioner maintained a bank account in the name of the "Universal wife Church dba Church of Holistic Science." He also maintained an account for the "Life Science Church - Trustee Rev. Gerald T. Lester." He had sole signatory power over both of these accounts. The accounts were funded with profits from the pharmacy after petitioner was paid a salary. A separate account entitled "Jerry Lester Pharmacy - A Division of L.S.C." was maintained for the day-to-day operations of the pharmacy. Petitioner's accountant signed these checks. Petitioner did not maintain a personal checking account. Petitioner used the funds in the ULC and LSC accounts to pay his personal expenses including but not limited to his mortgage payments, utility bills, food *99 and clothing expenses, and bar tabs. Petitioner also wrote checks from one account to the other, e.g., checks drawn on the LSC account were made payable to the ULC account and marked "donation." Petitioner made no contributions or donations to ULC, Modesto, except dues or tithings paid on a monthly or quarterly basis. No tax returns were filed for the pharmacy during the years here in issue. In the notice of deficiency issued to petitioner for the years 1978, 1979 and 1980, respondent determined that petitioner received income from his work as a pharmacist which was not reported on tax returns for those years in the amounts of $23,869, § 41,683 and $46,329, respectively, because petitioner had failed to establish that those amounts were excludable from gross income under the provisions of the Internal Revenue Code. Respondent also determined that the $5,200 claimed on petitioner's 1978 return as "a contribution deduction is not allowed" because petitioner has not established that ULC is "an entity recognized for tax purposes as being separate and distinct from you as an individual;" further that petitioner failed to establish that such alleged payment to ULC constitutes a *100 charitable contribution within the meaning of section 170(c), or that petitioner "did not receive, directly or indirectly, money, goods, services, or the use of property." Respondent also disallowed $54 of the medical deduction claimed on the 1978 return; and determined that petitioner was subject to self-employment tax for each of the years involved; and asserted additions to tax under sections 6651(a) for 1979 and 1980, and under sections 6653(a) and 6654(a) for each of the years 1978, 1979 and 1980. The parties stipulated that "respondent determined the deficiences in each of the years in issue by computing petitioner's adjusted gross income through the use of the Net Worth Method, obtaining facts from financial reports of the Jerry Lester Pharmacy prepared by petitioner's accountant," which were attached, and that "In the event that this Court determines that petitioner had unreported income during the years in issue the amounts computed by Revenue Agent Norvell are agreed to be the correct amounts." [6]
*101 OPINION Petitioner contends that his two churches, the ULC and the LSC, were religious organizations that were operated for religious purposes for the benefit of the public, not for the benefit of any private individual, that he was sanctioned by the churches to purchase a pharmacy to carry out the ULC belief in preventative medicine and to utilize his training as a pharmacist, that as the head of the chrurches he took a vow of poverty and transferred all of his assets and his income to the churches, and that all of the profits of the pharmacy belongs to the churches and are not taxable to him. He also claims that the salary he received from the pharmacy was as a minister or agent of the churches and was not taxable to him. Petitioner has offered no credible evidence that his churches even existed separate and apart from himself. He did produce a charter granted by ULC, Modesto, and bank accounts were opened in the names of both ULC and LSC. But there is no evidence of how or when the churches were organized, what their tenets were, who their members were or how they became members, how the churches were operated, or whether any records were kept. While bank accounts were *102 opened and maintained in the names of the church, petitioner had sole signatory power over both of the accounts and petitioner used the funds in the accounts to pay his personal expenses. He had complete control over all the funds in these accounts. There is no evidence that these funds were used for religious or other charitable purposes. Petitioner testified that ULC purchased the pharmacy and was entitled to the income thereof. But when he was asked about the source of the monies used to make the purchase, petitioner testified that he supplied the money while the rest of the congregation provided prayers. Furthermore the pharmacy was purchased in petitioner's name and there is no credible evidence that it was ever transferred to ULC or LSC. In filing various reports with governmental agencies, petitioner's name was given as the owner of the pharmacy. All of petitioner's income, so far as we can determine, was received by him from his pharmacutical activities for the pharmacy. There is no evidence that this income was received by him as minister or agent for the churches except that he apparently deposited most of it in bank accounts maintained in the name of the churches. *103 However, he held complete control of both accounts and used the funds to pay his personal living expenses. There was no relationship between the amounts he withdrew from the accounts and any services he performed for the churches. He transferred funds between the church accounts but there is no reliable evidence that the funds were used to either operate the churches or for other religious purposes. The income was generated by petitioner's individual efforts and was earned and received by him in his individual capacity. Even if we accepted petitioner's uncorroborated statement that he took a vow of poverty he would still be taxable on the income. As we said in McGahen v. Commissioner,76 T.C. 468, 478, (1981), affd. 720 F.2d 664 (3d. Cir. 1983), "[a] member of a religious order under a vow of poverty is not immune from Federal income tax by reason of his clerical status or his vow of poverty, but is subject to tax to the same extent as any other person on income earned or received in his individual capacity." See also Stephenson v. Commissioner,79 T.C. 995 (1982), affd. 748 F.2d 331 (6th Cir. 1984). [7]
*104 We agree with respondent that the income was taxable to petitioner. Charitable Contribution
While we have found that petitioner is liable for Federal income tax on the income he received from the pharmacy, petitioner may still be eligible for a charitable deduction under section 170(a) if he made a contribution to a qualifying organization. Petitioner claimed a deduction in 1978 of $5,200 for charitable contributions to the churches. Petitioner also testified that upon taking a vow of poverty, he transferred all of his assets to a charitable organization. Section 170(c) defines a charitable contribution as follows: (c) Charitable Contribution Defined.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- * * * (2) A corporation, trust, or community chest, fund, or foundation-- * * * (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * * (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; * * * Deductions are a matter of legislative grace, and taxpayers must satisfy the specific *105 statutory requirements of the deduction they claim. Deputy v. du Pont,308 U.S. 488 (1940); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). Petitioner bears the burden of proving his entitlement to the deductions claimed. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioner has completely failed to carry his burden of proof. It is unclear exactly what organization petitioner contributed to. However, if the contributions were made to his local chapter of the ULC, or the LSC, no deduction is allowable. Neither of the organizations qualify for tax-emempt status. Both of these organizations acted to personally benefit petitioner. Petitioner retained sole signatory power over the monies deposited in the ULC and LSC bank accounts. Petitioner also presented no evidence to support his claim that he had transferred all of his assets to the churches. In situations where a taxpayer retains dominion and control over the purportedly contributed property, no charitable contribution or gift has been made. See, e.g., Aufiero v. Commissioner,43 B.T.A. 753 (1941); Davis v. Commissioner,81 T.C. 806 (1983). *106 If petitioner's contributions were made instead to ULC, Modesto, the contributions would qualify for a deduction, provided all other requirements are met, since ULC, Modesto was a qualifying organization. [8] However, since petitioner's testimony is unclear and no evidence has been presented to support his contentions, we sustain respondent on this issue. Self-employment Tax
We must now determine whether petitioner is liable for self-employment tax on the income he earned at the pharmacy. Section 1401 provides for a tax upon the self-employment income of every individual.The term self-employment income is defined in section 1402(b) as "the net earnings from self-employment derived by an individual." Section 1402(a) defines "net earnings from self-employment" as "the gross income derived by an individual from any trade or business carried on by such individual." Under these definitions, petitioner's earnings from his pharmacy business were self-employment income. Petitioner was engaged in the trade *107 or business of a pharmacist. He purchased the pharmacy with his own money and listed himself as the owner of the pharmacy on numerous documents. He was the only pharmacist employed therein. Certain individuals are however exempted from self-employment tax. Section 1402(a) provides, under certain circumstances, for exemption of an ordained minister from self-employment tax for income he receives "with respect to services performed by him as such minister." Petitioner's income from his pharmacy was not received by him with respect to services performed by him as an ordained minister. Instead, he received the income for his services as a pharmacist. Therefore, petitioner is not exempt from tax under section 1402(a). Additions to Tax
Respondent determined that petitioner was liable for an addition to tax under section 6651(a) for the taxable years 1979 and 1980. Section 6651(a) provides for an addition to tax of up to 25 percent of the amount required to be shown on the return for a failure to file a tax return or to pay tax. The addition to tax does not apply if the failure is shown to be due to reasonable cause. The burden of proof with respect to this addition to tax is *108 upon petitioner. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioner argues that he did not file tax returns or pay tax because he had no income and owed no tax. As discussed above, petitioner is taxable on all income earned during the years at issue and was under an obligation to report this income and pay tax upon it. Petitioner has failed to carry his burden of overcoming respondent's determination. Therefore, we uphold the addition to tax under section 6651(a). Respondent also determined additions to tax under sections 6653(a) and 6654(a). Section 6653(a) provides for an addition to tax of five percent of the underpayment if any part of the underpayment is due to negligence or intentional disregard of rules and regulations. Petitioner has the burden of proof on this issue. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972); Enoch v. Commissioner,57 T.C. 781, 802-803 (1972). Petitioner appears to be an educated individual. He filed his returns annually up until he became associated with the ULC. Petitioner has offered no evidence to persuade us that he used care in ascertaining the legality of his position. *109 Consequently, we find that he has not overcome respondent's presumption of correctness and is liable for the addition to tax under section 6653(a). McGahen v. Commissioner,supra at 482-483. Section 6654(a) provides for an addition to tax for failure to make estimated tax payments. This addition to tax is mandatory unless petitioner can meet one of the exceptions provided. Petitioner has failed to offer any evidence to allow him to fit within one of the established exceptions. Accordingly, we sustain respondent's determinations as to the additions to tax. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and in effect during the taxable years at issue.All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The use of the terms "church", "members", or "congregation" is for convenience only and is not intended to represent any conclusion concerning the true nature of the entities or groups referred to.↩
3. Because we have little concrete evidence upon which to base findings of fact except petitioner's testimony, we will relate some of his testimony in our findings.↩
4. This refund claim was based upon taxes withheld by the State of California and various independent employers of petitioner during the first six months of 1978.↩
5. From petitioner's testimony, it is often difficult to tell which of his churches, the ULC or the LSC he is referring to. However, this confusion has no effect upon our ultimate decision.↩
6. We find it difficult to understand why respondent used a "net worth method" to determine petitioner's income, in light of his basic position that petitioner and the pharmacy were the same and apparently adequate books and records were maintained for the pharmacy by its accountant. The accountant's report lists itemized amounts of income from various sources and itemized business expenses from which net income was derived. Respondent has not shown that petitioner received taxable income from any other source. However, petitioner has not questioned respondent's method or his figures.↩
7. See also Kraeger v. Commissioner,T.C. Memo. 1984-571↩.
8. We note that the Internal Revenue Service revoked the tax exempt status of ULC, Modesto on September 4, 1984. Announcement 84-90, 1984-36 I.R.B. 32↩ (1984).