HOUSTON WHEELER KNIGHT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, RespondentKnight v. CommissionerDocket No. 1762-89United States Tax CourtT.C. Memo 1990-252; 1990 Tax Ct. Memo LEXIS 271; 59 T.C.M. (CCH) 661; T.C.M. (RIA) 90252; May 23, 1990, Filed *271 Decision will be entered for the respondent. Houston Wheeler Knight, pro se. Margaret R. Reichenberg, for the*272 respondent. PARR, Judge. PARR*912 MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in and additions to petitioner's individual Federal income tax for calendar year ending December 31, 1985, as follows: Additions to TaxDeficiency§ 6653(a)(1) 1§ 6653(a)(2)§ 6661(a)$ 32,747.98$ 1,637.40 * $ 8,186.99The issues for decision are: (1) Whether petitioner had unreported income totalling $ 78,174 in 1985; (2) Whether petitioner is liable for additions to tax for negligence; and (3) Whether petitioner is liable for an addition to tax for substantial understatement of tax. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioner*273 resided in Whittier, California, when he filed the petition in this case. Petitioner's wife, Jeanette M. Knight, died intestate on January 29, 1985. Mrs. Knight had no children. Petitioner was appointed administrator of the estate by the Probate Court of Little River County, Arkansas. On the petition for appointment he filed with the Probate Court petitioner listed himself as the decedent's only heir at law. Before her death, Mrs. Knight was employed as an elementary school teacher by the Whittier City School District. As such, she was a participant in a tax-deferred group annuity contract administered by American United Life Insurance Company. On her request for participation Mrs. Knight listed petitioner as her sole beneficiary. Petitioner's social security number is 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. Mrs. Knight's social security number was 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. In 1985 petitioner received $ 641 of original issue discount bond interest income from First Interstate Bank, account number 1612082196. *913 Sometime during or after 1987, the funds on which this interest distribution was based (an Individual Retirement Account (IRA) in Mrs. Knight's name, according to petitioner) were seized by the California*274 Franchise Tax Board. Petitioner received a California State tax refund of $ 14 during taxable year 1985. Sometime during or after 1987, the California Franchise Tax Board seized all California State tax refunds that were due to petitioner. During 1985, petitioner received $ 3,402 in dividend income from an account maintained in his name and social security number at Bank of Delight in Delight, Arkansas. Petitioner contends these dividends were paid on bank stocks which Mrs. Knight inherited from her father. Petitioner states he received this income in his capacity as administrator of his wife's estate, and that he used it solely for "estate purposes." On December 7, 1985, petitioner filed a claim with Mrs. Knight's annuity holder, American United Life Insurance Company. Paragraph 4 of the instructions on the reverse of the claim form stated:When proceeds are payable to the Estate or Executors or Administrator of the participant, or to a minor or mentally incompetent person, such executor, administrator, guardian or conservator must file an official certificate of his appointment with the Claimant's Statement. Petitioner did not file a certificate with*275 the claim. On the claim, he stated that the death benefit was payable to himself as beneficiary, in his relationship to participant as "Husband." The face of the claim form also cautioned, "PLEASE READ REVERSE SIDE, NUMBER 6, BEFORE COMPLETING." Paragraph 6 states: The distributions you receive are subject to Federal Income Tax withholding unless you elect not to have withholding apply. * * * If you elect not to have withholding apply to your distribution, or if you do not have enough Federal Income Tax withheld from your distribution, you may be responsible for payment of estimated tax. You may incur penalties under the estimated tax rules if your withholding and estimated tax payments are not sufficient. The election for withholding of Federal Income Tax must be completed before benefits will be released. Petitioner checked a box marked, "I do not want Federal Income Tax withheld from the distribution." On or about December 16, 1985, petitioner received a distribution by check in the amount of $ 74,117.92 from American United Life Insurance Company. The check was made payable to "Houston W. Knight." A notation thereon says, "H. W. Knight Ben. *276 of J. M. Knight, Dec." The payor issued petitioner a Form 1099-R showing a taxable distribution of $ 74,117.92, on which no Federal income tax was withheld. Petitioner contends that five-ninths of this distribution was already subject to taxes. He also contends that he received this distribution in his capacity as administrator and that the funds are being used solely to pay expenses of some family farms in Arkansas. Petitioner filed a joint income tax return for 1985 with the Internal Revenue Service Center at Fresno, California. The Service Center received the return on or about May 29, 1986. On Schedule E of his 1985 income tax return, petitioner listed three rental properties in Arkansas and claimed a $ 9,100 loss in connection therewith. He also claimed a miscellaneous deduction on Schedule A for travel expenses of $ 4,679, stating, "Travel is to Arkansas to care for, work on, and keep up income producing property in that state. Two trips - two people." Respondent did not challenge either the loss or the deduction. OPINION Petitioner's primary argument is that amounts paid to him during 1985 by AmericanUnited Life Insurance Company, Bank of Delight, and First Interstate*277 Bank were paid to him as the agent of his wife's estate and, therefore, should not be included in his taxable income. He also states that he should not be taxed on the IRA interest or State tax refund because other funds were later seized by the State for unpaid taxes. Income received by a person as an agent for a principal is the income of the principal, not the agent. Maryland Casualty Co. v. United States, 251 U.S. 342, 345-348 (1920). Where, however, no agent-principal relationship exists, an assignment of income to another person is ineffectual to relieve the recipient of Federal income tax liability on such income, regardless of the motive behind the assignment. United States v. Basye, 410 U.S. 441, 447 (1973); Commissioner v. Culbertson, 337 U.S. 733, 739-740 (1949); Lucas v. Earl, 281 U.S. 111 (1930). Whether an agency relationship exists depends upon the underlying facts. Stephenson v. Commissioner, 79 T.C. 995, 999-1001 (1982),*278 affd. 748 F.2d 331 (6th Cir. 1984); McGahen v. Commissioner, 76 T.C. 468, 478-479 (1981), affd. without opinion 720 F.2d 664 (3d Cir. 1983); see also Schuster v. Commissioner, *914 800 F.2d 672, 677 (7th Cir. 1986), affg. 84 T.C. 764 (1985). Although petitioner was named by an Arkansas court as administrator of his wife's estate, it is manifestly clear that he received the annuity payment in his personal capacity as Mrs. Knight's beneficiary, not as her personal representative. She named him, not her estate, as beneficiary. He did not follow the procedure for filing a claim as personal representative, but rather followed the procedure for a personal beneficiary. Regardless of how petitioner has used the money, there is no doubt he had complete dominion and control over it, without any fiduciary duty to account for it to anyone. It also appears that there is no "estate" for petitioner to protect (other than, perhaps, the bank stock). Petitioner told an inconsistent and incoherent tale about the contents of Mrs. Knight's "estate." He first said it consisted of several farms in Arkansas. Then he said*279 this property never actually belonged to his wife; it was left by her father to her brother's son, but could not be distributed yet because Mrs. Knight's mother was still alive, though incompetent to care for the property. Petitioner claimed he was using the proceeds from Mrs. Knight's annuity, and the stock dividends which were distributed to him in his personal capacity, to pay expenses incurred in connection with the farms. Petitioner explained that he was taking care of the property until the grandson (Mrs. Knight's nephew) who would inherit the farms is able to take the responsibility. Petitioner's explanation strains credulity. Petitioner lives in California. The farms are in Arkansas where the nephew lives. The nephew is 38 years old. In any event, the nephew's anticipated inheritance is clearly not Mrs. Knight's "estate." Moreover, on cross-examination petitioner clearly stated that he owned no property in Arkansas. However, when confronted with his own income tax return for the year in issue, and the fact that he had claimed a loss on three rental houses in Arkansas, petitioner opined that his wife may have owned one house. Furthermore, the fact that*280 funds were later seized by the State of California has no bearing on the taxability of the income at issue. The seizure occurred in a later year and is thus irrelevant. Petitioner also claimed that five-ninths of the annuity had already been taxed. However, the evidence shows that Mrs. Knight's annuity was a tax-deferred annuity, funded with before-tax contributions. Section 403(b) provides that annuity contracts may be purchased by an organization such as the Whittier City School District for the benefit of employees. However, under section 403(b)(1) employees must include in their gross income amounts received as distributions, as provided by section 72. Section 72(e) provides that an amount distributed under an annuity contract but not received as an annuity shall be included in gross income to the extent allocable to income on the contract. Because the contributions to Mrs. Knight's annuity contract were made with before-tax income, the entire distribution is allocable to income on the contract. See sec. 72(c)(1) and (e)(3). For the above reasons, we sustain respondent as to*281 the deficiency. Respondent also determined an addition to tax for negligence. Petitioner claimed he followed telephonic advice from the IRS that the distribution from Mrs. Knight's annuity was not taxable. However, he also testified that he told the IRS it was received in his capacity as administrator of her estate. As we have found, that was not correct. Petitioner had clear notice -- from both the claim form and from receipt of a Form 1099-R from the payor -- that the distribution was taxable. He elected not to have tax withheld. We agree with respondent that petitioner was negligent. Finally, respondent also determined an addition to tax under section 6661(a) for a substantial understatement of income tax. The amount of the understatement meets the requirements set out in section 6661(b), and petitioner has not shown substantial authority for, or adequate disclosure of, the understatement. See section 6661(b)(2)(B). Therefore, respondent is sustained on this issue as well. Decision will be entered for the respondent. Footnotes1. Unless otherwise indicated all section references are to the Internal Revenue Code of 1954 as amended and in effect for the taxable year at issue. * 50% of the interest due on the deficiency.↩