T.C. Summary Opinion 2009-107

UNITED STATES TAX COURT

JEROME FRANCIS SCHMITT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7249-06S.                    Filed July 13, 2009.

Jerome Francis Schmitt, pro se.

<u>Brian Bilheimer</u> and <u>Marco Franco</u>, for respondent.

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect when the petition was filed.  Pursuant to section 7463(b),
the decision to be entered is not reviewable by any other court,
and this opinion shall not be treated as precedent for any other
case.  Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code in effect for the years at

issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined for 2001 a deficiency in petitioner's Federal income tax of $4,456, a fraud penalty under section 6663 of $2,815, and in the alternative an accuracy-related penalty under section 6662 of $128. Respondent determined for 2002 a deficiency in petitioner's Federal income tax of $5,192, a fraud penalty under section 6663 of $2,714, and in the alternative an accuracy-related penalty under section 6662 of $315.

Petitioner presented no argument or evidence with respect to any of the adjustments that result in the deficiencies for either year. He is deemed to have conceded those items. See Bradley v. Commissioner, 100 T.C. 367, 370 (1993); Sundstrand Corp. & Subs. v. Commissioner, 96 T.C. 226, 344 (1991); Rybak v. Commissioner, 91 T.C. 524, 566 n.19 (1988).

The issue remaining for decision is whether petitioner is liable for the fraud penalty, or in the alternative the accuracy-related penalty, for 2001 or 2002.

## Background

None of the facts have been stipulated. The exhibits received in evidence are incorporated herein by reference. When the petition was filed, petitioner was living in New York.

Petitioner timely filed his Federal income tax returns for 2001 and 2002. Petitioner marketed telecommunication services in

the New York City area during the years at issue.  On his income tax returns petitioner itemized his deductions and filed Forms 2106, Employee Business Expenses, claiming, before the application of the 2-percent floor of section 67(a), employee business expenses of $15,008 for 2001 and $14,778 for 2002.  On line 7 of the forms, "reimbursements received from your employer", petitioner indicated zero.

Respondent selected petitioner's tax return for examination. Revenue Agent Richard Lebrando (Lebrando) sent an appointment letter to petitioner to begin the examination.

Petitioner appeared for the initial examination meeting accompanied by his return preparer.  Lebrando asked petitioner for substantiation of his employee business expenses and charitable contributions as shown on his Schedule A, Itemized Deductions.  Petitioner provided to Lebrando a typewritten statement asserting that petitioner marketed telecommunications services and that "My company didn't have [sic] reimbursement policy."  Upon receipt of petitioner's statement, Lebrando asked petitioner to supply him with a letter or other documentation from his employer to corroborate the written statement.

Petitioner provided Lebrando with an undated document bearing an apparent letterhead with the name "Primus Telecommunications Group, Inc." (Primus), in response to the agent's document request.  The document states that petitioner

was employed as a "Senior Account Executive" with the company in 2001[1] and that Primus "had no stated reimbursement policy for their expenses at that time."  The document is signed by a Steve Garcia, "Sales Manager".  Lebrando thought the document appeared suspect because the letterhead looked just like the top of the Web site of Primus.

Lebrando contacted Primus and solicited a copy of its reimbursement policy.  Primus forwarded to Lebrando a copy of its "Financial Policy And Procedure Manual" dated February 1, 2001. The first paragraph of the manual states:  "Employees will be reimbursed for actual and reasonable expenses incurred while traveling or conducting business on behalf of the Company or attending mandatory Company meetings."  Primus's human resources (HR) department informed Lebrando by letter[2] that Steven Garcia was an account executive whose manager was Richard Cadiz.  The HR department enclosed copies of petitioner's signed reimbursement requests for travel expenses for 2001.

Lebrando expanded his examination to include 2002. Petitioner informed Lebrando that his employer in 2002 was not the same as in 2001.  Petitioner provided Lebrando with a

---

[1]Petitioner attached to his 2001 Federal income tax return a Form W-2, Wage and Tax Statement, from Primus showing wages of $31,337.54.

[2]The letterhead on the human resources letter differed from that of the document that petitioner had supplied to Lebrando.

document indicating that it was from "Broadview Networks" (Broadview).[3]  The undated document states that Broadview employed petitioner as an account executive in 2002 and that "Broadview Networks, Inc, had no stated reimbursement policy for their expenses at that time."  The document bears the signature of a William Cory, "Sales Director".

Lebrando contacted Broadview and obtained from the company's comptroller a copy of its 30-page expense reimbursement policy effective for 2002.  The comptroller reported to Lebrando by letter that the statement in petitioner's document that Broadview had no reimbursement policy "is completely untrue."  The comptroller also reported that Broadview "has never employed a Sales Director named William Cory."

Petitioner attempted to substantiate his mileage with documents entitled "Log of Miles Driven" for 2001 and 2002.  The document for 2001 purports to cover the period from January 4 through April 12, 2001.  The document for 2002 lists dates from January 7 through October 28, 2002.  The documents show the categories of "Contact Name & Address", miles driven "Per Mapquest", and "Tolls/Parking".

Petitioner provided a similar document as substantiation for his entertainment and meals expenses for 2001.  Lebrando

---

[3]Petitioner attached to his 2002 Federal income tax return a Form W-2 from Broadview Network reporting wages of $61,359.93.

attempted to match the dates and locations on the mileage log with those on the entertainment and meals expense log to no avail. No similar log was provided for 2002, but petitioner did submit copies of American Express card statements, with certain amounts circled for the period April 9 through December 6, 2002. He did not explain the significance of the circled items. There were charges on the statements for both petitioner and Alice E. Schmitt. For May 5, 2002, petitioner circled charges for food and beverages purchased in both Springfield, Virginia, and New York.

At trial petitioner was disruptive and refused to cooperate with either respondent or the Court.

## Discussion

### Addition to Tax for Fraud

The Commissioner has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Parks v. Commissioner, 94 T.C. 654 (1990).

As part of his burden in the trial of a fraud case, the Commissioner must first prove an underpayment of some amount of tax. Sec. 6663(a);[4] Hebrank v. Commissioner, 81 T.C. 640, 642 (1983). To do this, the Commissioner may not merely rely on a

---

[4]Former sec. 6653 was repealed and replaced in part by sec. 6663. See Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7721(a), (c)(1), 103 Stat. 2395, 2399.

taxpayer's failure to disprove the deficiency determination. Parks v. Commissioner, supra at 660-661.

Second, the Commissioner must show that at least some part of the underpayment of tax was due to fraud. Sec. 6663(a); Rule 142(b); DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Parks v. Commissioner, supra at 664; Hebrank v. Commissioner, supra. If the Commissioner establishes that some portion of the underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment that the taxpayer establishes is not attributable to fraud. Sec. 6663(b).

The Commissioner will meet his burden of proof if it is shown that the taxpayer intended to evade a tax known to be due and owing by conduct intended to conceal, mislead, or otherwise prevent tax collection. Stoltzfus v. United States, 398 F.2d 1002, 1004-1005 (3d Cir. 1968); Parks v. Commissioner, supra at 661; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. DiLeo v. Commissioner, supra at 874. The Commissioner may prove fraud by circumstantial evidence because direct evidence of the taxpayer's intent is rarely available. Stephenson v. Commissioner, 79 T.C. 995, 1005-1006 (1982), affd. per curiam 748 F.2d 331 (6th Cir. 1984).

Intent to mislead or conceal may be inferred from a pattern of conduct. Spies v. United States, 317 U.S. 492, 499 (1943). A pattern of consistent underreporting of income for several years, especially when accompanied by other circumstances showing intent to conceal, is strong evidence of fraud. Holland v. United States, 348 U.S. 121 (1954); Parks v. Commissioner, supra at 664. An implausible explanation of behavior is also a "badge of fraud". Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601.

The Court, however, will not sustain a determination of fraud based only on circumstances that at most create only the suspicion of fraudulent intent. Katz v. Commissioner, 90 T.C. 1130, 1144 (1988); Green v. Commissioner, 66 T.C. 538, 550 (1976); Ross Glove Co. v. Commissioner, 60 T.C. 569, 608 (1973).

Respondent has shown that petitioner failed to report the receipt of $2,639.73 of income reported on Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit Sharing Plans, IRAs, Insurance Contracts, etc., in 2002 and claimed deductions for unreimbursed employee business for which he lacked proper substantiation for both 2001 and 2002. Respondent has shown that petitioner underpaid his taxes for both years.

For both years petitioner deducted relatively large amounts of employee business expenses for which he failed to produce

appropriate substantiation. Petitioner, on his tax returns, stated that he had received no reimbursements from his employers for his employee business expenses. Respondent, however, obtained records from one of his employers that show that petitioner in fact received reimbursement for expenses in 2001 pursuant to his employer's written reimbursement policy. During the examination of both his 2001 and 2002 returns, petitioner submitted false documents to Lebrando concerning his employers' reimbursement policies. Petitioner's submission of the false documents is evidence of guilty knowledge that he could have received or did receive expense reimbursements and falsified his tax returns to wrongfully obtain tax deductions.

The Court holds that respondent has produced clear and convincing evidence that part of each underpayment of tax for 2001 and 2002 was due to fraud under section 6663. Since petitioner has not shown that any portion of the underpayment for each year is not due to fraud, the entire underpayment shall be treated as attributable to fraud.[5]  Sec. 6663(b).

To reflect the foregoing,

> Decision will be entered
>
> for respondent.

---

[5]The accuracy-related penalty under sec. 6662(a) does not apply to any portion of an underpayment on which the fraud penalty under sec. 6663 applies. Sec. 6662(b).