T.C. Memo. 2014-76

UNITED STATES TAX COURT

JIM F. FLAKE AND MARTHA N. FLAKE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9344-12.                                    Filed May 5, 2014.

Jim F. Flake and Martha N. Flake, pro sese.

<u>Amber B. Martin</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Chief Judge</u>:  Respondent determined deficiencies of $16,240

and $58,094, respectively, in petitioners' 2007 and 2008 Federal income tax and

section 6663 fraud penalties of $12,180 and $43,571, respectively, for their 2007

[*2] and 2008 tax years.[1] All section references are to the Internal Revenue Code in effect for the taxable years at issue. Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts have been rounded to the nearest dollar.

After concessions by both parties, which are discussed in more detail below, the issues for decision are: (1) whether petitioners are entitled to deduct car and truck expenses greater than respondent has allowed; (2) whether petitioners are liable for fraud penalties under section 6663; and (3) whether (in the alternative to the fraud penalties) petitioners are liable for section 6662(a) accuracy-related penalties.

FINDINGS OF FACT

The parties have stipulated some facts, which we so find. When they petitioned the Court, petitioners resided in Tennessee.

I. Background

During the years at issue Mr. Flake was self-employed in the business of building and repairing radio towers both locally and throughout the United States.

---

[1]In his answer, respondent asserted that sec. 6662 accuracy-related penalties of $3,428 and $11,619 for petitioners' 2007 and 2008 tax years, respectively, should be imposed to the extent that the sec. 6663 fraud penalties do not apply.

[*3] At times his business required that he or family members drive long distances to these radio towers.

Petitioners have 12 children, a number of whom still lived at home during the years at issue. Mrs. Flake was primarily a homemaker responsible for raising the children. She also assisted Mr. Flake in various aspects of the radio tower business, including invoicing and billing their clients.

II. Petitioners' Recordkeeping

Before the years at issue Mr. Flake prepared handwritten invoices after he completed his jobs for the radio tower business. He kept the invoices in a metal box.

During 2007 and 2008 the radio tower business started to win bids to perform large government contracts. These contracts required Mr. Flake to provide these customers electronic rather than handwritten invoices. Because Mr. Flake was uncomfortable preparing invoices electronically, Mrs. Flake became primarily responsible for maintaining and keeping the radio tower business records during 2007 and 2008. Adopting Mr. Flake's method of recordkeeping, Mrs. Flake prepared electronic invoices and placed copies in the metal box. When she received a check from a customer, she marked the corresponding invoice as paid and replaced it in the metal box. Petitioners kept their receipts for business

**[*4]** expenditures in plastic bags along with index cards that showed the amounts and types of expenses.

## III. The Cash Reserve

Petitioners maintained a modest and frugal lifestyle. Mr. Flake often needed cash on hand to make purchases for his business. Early in their marriage petitioners began accumulating a cash reserve. They periodically added to their cash reserve when a radio tower job was completed or when they had money left over after expenses. For many years they kept this cash reserve in a fireproof box at their house. The parties agree that on December 12, 2007, petitioners withdrew $177,000 from their cash reserve and deposited it into one of their bank accounts.

## IV. Petitioners' 2007 and 2008 Federal Income Tax Returns

Petitioners timely filed Federal income tax returns for their 2007 and 2008 taxable years.

Petitioners attached to their 2007 return a Schedule C, Profit or Loss From Business, which reported $417,590 of gross receipts or sales, $199,676 of cost of goods sold, and a gross profit of $217,914. They also reported expenses,

[*5] including, among other things, $54,756 of car and truck expenses and $84,000 of other expenses.[2]

Petitioners attached to their 2008 return a Schedule C, which reported $358,070 of gross receipts or sales, $123,430 of cost of goods sold, and a gross profit of $234,640. They also reported expenses, including, among other things, $60,316 of car and truck expenses and $75,900 of other expenses.[3]

V. Respondent's Determinations

On March 8, 2010, respondent's revenue officer began examining petitioners' 2007 and 2008 tax returns. As part of the examination the revenue officer requested certain documentation and met with petitioners at their residence every two weeks until the examination ended on February 22, 2011. Petitioners provided the revenue officer with copies of their business invoices, receipts, certain financial summary sheets, copies of their 2006 through 2008 income tax returns, and specific information that tied gross receipts to those income tax returns.

---

[2]Petitioners elected to use the standard mileage rate rather than actual costs to calculate their 2007 car and truck expenses. On their Schedule C petitioners reported 112,900 business miles and no commuting or other miles.

[3]Petitioners also elected to use the standard mileage rate rather than actual costs to calculate their 2008 car and truck expenses. On their Schedule C petitioners reported 107,000 business miles and no commuting or other miles.

**[*6]**  In the notice of deficiency respondent determined that petitioners had understated their 2007 income tax by $16,240 and their 2008 income tax by $58,094.  Respondent also determined that petitioners were liable for a $12,180 section 6663 civil fraud penalty for their 2007 tax year and a $43,571 section 6663 civil fraud penalty for their 2008 tax year.  In the alternative respondent determined that section 6662 accuracy-related penalties applied for 2007 and 2008.

The amounts petitioners reported on their 2007 and 2008 Schedules C, respondent's determinations with respect to those Schedules C, and the parties' agreements are summarized below:

### 2007 Schedule C

|  | Amount reported on petitioners' tax return | Amount respondent determined in notice | Amount agreed by parties |
|---|---|---|---|
| Gross receipts | $417,590 | $440,988 | $440,998 |
| Cost of goods sold | 199,676 | 167,212 | 167,212 |
| Car and truck expense | 54,756 | 45,610 | In dispute |
| Depreciation | -0- | 1,337 | -0- |
| Other expenses | 84,000 | 67,950 | 84,000 |

[*7]                            2008 Schedule C

|  | Amount reported on petitioners' tax return | Amount respondent determined in notice | Amount agreed by parties |
|---|---|---|---|
| Gross receipts | $358,070 | $535,360 | $465,312 |
| Cost of goods sold | 123,430 | 135,841 | 135,841 |
| Car and truck expense | 60,316 | 26,685 | In dispute |
| Depreciation | -0- | 9,808 | -0- |
| Other expenses | 75,900 | 77,147 | 77,147 |

OPINION

## I. Burden of Proof

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer has the burden of proving that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners have not claimed and the record does not establish that section 7491(a) applies to shift the burden of proof to respondent as to any relevant factual issue.

## II. Car and Truck Expenses

Petitioners claimed on their 2007 and 2008 Schedules C deductions of $54,756 and $60,316, respectively, for car and truck expenses. Respondent

[*8] determined that petitioners were entitled to deduct only $45,610 and $26,685 of these expenses for 2007 and 2008, respectively.

Section 162(a) allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. In general, no deduction is permitted for personal, living, or family expenses. Sec. 262(a).

Certain types of deductions, including those related to "listed property", require the taxpayer to meet more stringent substantiation requirements.[4] See sec. 274(d)(4); Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969). More particularly, the taxpayer must substantiate "by [either] adequate records or by sufficient evidence corroborating * * * [his or her] own statement" the amount of the expense, the time and place each expense was incurred, and the business purpose of each expense. Sec. 274(d)(4); sec. 1.274-5T(b) and (c), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46016 (Nov. 6,

---

[4]"Listed property" includes any passenger automobile and "any other property used as a means of transportation", see sec. 280F(d)(4)(A)(i) and (ii), but sec. 274(d)'s stringent substantiation rules do not apply to a "qualified nonpersonal use vehicle", sec. 274(d), defined as "any vehicle which, by reason of its nature, is not likely to be used more than a de minimis amount for personal purposes", sec. 274(i). Petitioners have not established that any of their vehicles meet this exception. In any event, even if the Court were to conclude that one or more of petitioners' vehicles qualified for this exception, the record lacks a basis from which we could make an estimate of allowable expenses with respect to any such vehicles. See Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

[*9] 1985).  To meet the "adequate records test" under section 274(d) and the relevant regulations, the taxpayer must maintain an account book, a diary, a log, a statement of expense, trip sheets, or similar records, and documentary evidence, such as receipts or bills, which, in combination, are sufficient to establish each element of an expenditure or use.  See sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  Although a contemporaneous log is not required, "the probative value of written evidence is greater the closer in time it relates to the expenditure or use."  Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., supra; see also Larson v. Commissioner, T.C. Memo. 2008-187.  In the absence of adequate records to establish each element of an expense under section 274(d), a taxpayer may alternatively establish an element "(A) By his own statement, whether written or oral, containing specific information in detail as to each element; and (B) By other corroborative evidence sufficient to establish such element."  Sec. 1.274-5T(c)(3)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).

Section 1.274-5(j)(2), Income Tax Regs., provides that the Commissioner may prescribe a standard mileage rate that a taxpayer may use to determine a deduction with respect to the business use of a passenger automobile.  Under this authority the Commissioner issued Rev. Proc. 2006-49, 2006-2 C.B. 936, Rev.

**[*10]** Proc. 2007-70, 2007-2 C.B. 1162, and Announcement 2008-63, 2008-2 C.B. 114, which provide rules for using a standard mileage rate in lieu of substantiating the actual amounts of expenditures relating to the business use of a passenger automobile.[5]  A taxpayer who uses this method is not relieved of the requirement to substantiate the amount of business mileage and the time and purpose of each use.  Sec. 1.274-5(j)(2), Income Tax Regs.

If a taxpayer establishes a deductible expense but is unable to substantiate the precise amount, the Court generally may approximate the deductible amount, see Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), but the Court may not estimate a taxpayer's expense with respect to the items enumerated in section 274(d), see Sanford v. Commissioner, 50 T.C. at 827.

Petitioners argue they are entitled to deduct car and truck expenses calculated by using standard mileages rates as applied to the 112,900 and 107,000

_____

[5]The Commissioner generally updates the optional standard mileage rates annually.  Rev. Proc. 2006-49, sec. 5.01, 2006-2 C.B. 936, 938, was effective for transportation expenses incurred on or after January 1, 2007.  Rev. Proc. 2007-70, sec. 5.01, 2007-2 C.B. 1162, 1164, was effective for transportation expenses incurred on or after January 1, 2008.  Rev. Proc. 2007-70, supra, was modified by Announcement 2008-63, 2008-2 C.B. 114, for transportation expenses paid or incurred on or after July 1, 2008.  Under Rev. Proc. 2006-49, sec. 5.01, taxpayers were entitled to 48.5 cents per mile, under Rev. Proc. 2007-70, sec. 5.01, taxpayers were entitled to 50.5 cents per mile effective January 1, 2008, and under Announcement 2008-63, supra, taxpayers were entitled to 58.5 cents per mile effective July 1, 2008.

**[*11]** business miles they say they drove in 2007 and 2008, respectively. They contend that during the Internal Revenue Service's (IRS) examination of their income tax returns they provided odometer readings, credit card statements, fuel receipts, appointment book notes, and invoices, as well as reconstructed calendars based on these documents, and that these records satisfy the strict substantiation requirements of section 274(d).

Although petitioners introduced the reconstructed calendars into evidence, they did not discuss with any degree of specificity the entries that appear on them. The calendars purport to show the total number of business miles driven to various cities on various dates throughout 2007 and 2008. Each monthly calendar sheet contains a notation of the total number of business miles driven that month. Many of these sums do not square with the business miles recorded for each day of the month.[6] Moreover, the calendars show significantly fewer total business miles than petitioners claimed on their 2007 and 2008 Schedules C. Various entries on the calendar sheets strain credibility, and petitioners have offered no plausible

---

[6]For example, on their February 2008 calendar sheet, petitioners' notation shows 5,220 total business miles allegedly driven in that month whereas the individual daily entries add up to only 3,226 miles.

[*12] explanation for these entries.[7]  Given these evidentiary infirmities and taking into account that the reconstructed calendars were created during the IRS' examination of petitioners' returns, we do not find the calendars reliable or helpful in establishing their car and truck expenses.  In the absence of adequate records to establish each element of their claimed car and truck expense deductions, and absent other sufficient corroborative evidence sufficient to establish each element, petitioners have failed to satisfy the strict substantiation requirements of section 274(d).  We hold that they are entitled to business mileage deductions only to the extent respondent has allowed in the notice of deficiency.[8]

III.  Section 6663 Fraud Penalty

Section 6663 imposes a 75% penalty on any part of a tax underpayment due to fraud.  To support a finding of tax fraud, the Commissioner must show that the taxpayer engaged in conduct with the intent to evade taxes that he knew or believed to be owing.  United States v. Walton, 909 F.2d 915, 926 (6th Cir. 1990).  The Commissioner has the burden of proving, by clear and convincing evidence,

---

[7]For example, petitioners reported on their June and October 2007 calendar sheets that they drove 3,388 and 8,000 miles, respectively, in one day.

[8]We note that respondent's concession that petitioners are entitled to a $45,610 deduction for business miles for 2007 results in a greater deduction than the $30,063 deduction (61,986 reconstructed miles x 48.5 cents per mile) indicated by petitioners' 2007 reconstructed calendar.

**[*13]** an underpayment for the year at issue and that some part of the

underpayment for that year is due to fraud. Sec. 7454(a); Rule 142(b). Fraud is

not to be presumed or based upon circumstantial evidence which creates merely a

suspicion of fraud. Petzoldt v. Commissioner, 92 T.C. 661, 699-700 (1989);

Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Because direct evidence of intent

is often unavailable, however, courts may infer fraudulent intent from strong

circumstantial evidence. Spies v. United States, 317 U.S. 492 (1943); Stephenson

v. Commissioner, 79 T.C. 995, 1005-1006 (1982), aff'd, 748 F.2d 331 (6th Cir.

1984).

In fraud cases it may happen that, although the taxpayer fails to overcome

the presumption of correctness as to the determined deficiencies in tax, the

Commissioner also fails to establish that the deficiencies were the result of fraud.

"Both parties to a proceeding may fail through inadequate proof on the several

issues." Kashat v. Commissioner, 229 F.2d 282, 285 (6th Cir. 1956), aff'g in part,

rev'g in part a Memorandum Opinion of this Court dated March 29, 1954.

Respondent contends several badges of fraud are present in this case.

Specifically, he argues that petitioners failed to keep adequate income and expense

records for their business and dealt largely in cash, keeping a large cash reserve on

[*14] their property. He also argues that petitioners provided inconsistent explanations of their behavior.

Petitioners testified credibly that although their business records were unorganized, they had made a good-faith effort in keeping them. In 2007 and 2008 Mrs. Flake had begun to take a more active role in her husband's business. Her testimony convinces us that the inadequacy of her recordkeeping was attributable to her inexperience at this task and her competing duties as mother to numerous children rather than to any fraudulent intent.

Additional circumstances that weigh against a finding of fraud include: petitioners timely filed their 2007 and 2008 income tax returns; they met with respondent's revenue officer every two weeks for about a year during the examination of their income tax returns and complied with the revenue officer's requests for information; and after the examination of their income tax returns and during the pendency of these proceedings respondent concluded that petitioners were actually entitled to greater cost of goods sold and larger deductions for certain items than they had claimed on their 2008 income tax return.

Respondent urges that this Court should find fraudulent intent because petitioners maintained a large cash reserve. He contends it would have been impossible for petitioners to have saved $177,000 from the income that they

[*15] reported on their 1988 through 2007 returns.  A large cash reserve may sometimes indicate fraud.  See Conti v. Commissioner, T.C. Memo. 1992-616, aff'd and remanded on other grounds, 39 F.3d 658 (6th Cir. 1994).  Respondent, who has the burden of proof on this issue, however, has not shown clearly and convincingly that petitioners' cash reserve was the result of fraudulent underreporting of their income for the years at issue or for any other year.  On the basis of petitioners' credible testimony and corroborating evidence, we have found that petitioners maintained a modest and frugal lifestyle, required cash for the business, and in fact accumulated a large cash reserve.  Because respondent has failed to prove fraud clearly and convincingly, we do not sustain the fraud penalties.

## IV.  Accuracy-Related Penalties

Respondent contends alternatively that petitioners are liable for the section 6662(a) accuracy-related penalty for each year at issue.  Section 6662(a) and (b) imposes a penalty equal to 20% of the portion of the underpayment that is attributable to, among other things, negligence or disregard of rules or regulations.  Negligence is defined as "any failure to make a reasonable attempt to comply with the provisions of * * * [the Internal Revenue Code]".  Sec. 6662(c); see also Neely v. Commissioner, 85 T.C. 934, 947 (1985).  Negligence also includes any failure

[*16] by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs.

The Commissioner bears the burden of production with respect to the section 6662 penalty. Sec. 7491(c). Generally, this means that the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty. Once the Commissioner has done so, the burden of proof is on the taxpayer to show that the penalty does not apply. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Petitioners exhibited a lack of due care in failing to report income, to keep adequate books and records, and to properly substantiate claimed deductions. Respondent has carried his burden of production with respect to the section 6662(a) penalty.

The accuracy-related penalty does not apply with respect to any portion of an underpayment for which it is shown that the taxpayer had reasonable cause and acted in good faith. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most significant factor is the extent of the taxpayer's effort to assess his or her proper tax liability. Id. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law

**[*17]** that is reasonable in the light of the taxpayer's experience, knowledge, and education.  Id.

Petitioners have failed to show they acted with reasonable cause and in good faith.  Their underpayments resulted from failure to report income and from claiming deductions to which they were not entitled or which they did not adequately substantiate.  They admitted that they kept poor and unorganized records for their business.  We sustain the imposition of the accuracy-related penalties for negligence.

To reflect the foregoing and the parties' concessions,

Decision will be entered

under Rule 155.