Robert P. GIORDANO, M. D., Cross-Appellee,

v.

Richard L. ROUDEBUSH, Administrator of Veterans' Affairs; Veterans' Administration; John Chase, Eugene Caffey, Jr., Louis Polumbo; T. E. Corcoran; Richard Bjork; Robert Pepiot; and the United States of America; M. D. Pareira, Cross-Appellants.

Nos. 79–1189, 79–1331.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 8, 1979.

Decided March 26, 1980.

Richard G. Santi, Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, Iowa, argued, Lance A. Coppock, Des Moines, Iowa, on brief, for Robert P. Giordano.

Robert S. Greenspan, Atty., Dept. of Justice, Civil Division, Appellate Staff, Washington, D. C., argued, Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D. C., Roxanne Barton Conlin, U. S. Atty., Des Moines, Iowa and William Kanter and Robert S. Greenspan, Washington, D. C., on brief, for Richard L. Roudebush, et al.

Lawrence Speiser, Speiser & Kolker, Washington, D. C., for amicus curiae, Nat. Ass'n of VA Physicians.

Before LAY, Chief Judge,* HEANEY and HEANLEY, Circuit Judges.

* The Honorable Donald P. Lay became Chief Judge of the Eighth Circuit on January 1, 1980.

LAY, Chief Judge.

Two basic issues are involved in this appeal from the federal district court: (1) whether the Tucker Act, 28 U.S.C. § 1491, gives the Court of Claims exclusive jurisdiction of plaintiff's claim for reinstatement to his position with the Veterans' Administration when the back pay sought against the United States exceeds $10,000; and (2) assuming the district court had jurisdiction whether it correctly construed the statutory authority under which the Chief Medical Director discharged the plaintiff.[1]

On February 21, 1976, Dr. Robert P. Giordano was discharged as Assistant Chief of Urology from the Veterans' Administration (VA) Hospital in Des Moines where he had been serving as a probationary employee. Only two days earlier, he was informed that the Chief Medical Director of the VA had approved the recommendation of the Professional Standards Review Board that he be separated from service for failure to perform satisfactorily. Dr. Giordano filed suit in federal district court,[2] alleging *inter alia* a denial of due process in the review proceedings surrounding his discharge. The district court originally ordered a rehearing before the Professional Standards Review Board in Washington, D.C. so that Dr. Giordano would have a fair opportunity to present his case.[3] No appeal was taken from this order. After a rehearing, the Board voted 2–1 to retain Dr. Giordano.

Notwithstanding this determination, the VA's Chief Medical Director ordered his discharge. Thereafter Dr. Giordano sought redress in the district court. The district court entered a judgment for back pay in excess of $70,000. Defendants filed a motion to vacate the judgment, asserting for the first time that the district court was without jurisdiction to grant a judgment against the United States in excess of $10,-000. The district court agreed that it did not have jurisdiction to award back pay in excess of $10,000 and held that jurisdiction to award back pay lies exclusively in the Court of Claims. It ultimately ordered the entire damage claim transferred to the Court of Claims. However, at the same time, the district court recited that Dr. Giordano's initial discharge was arbitrary and capricious; and that his second discharge by the Chief Medical Director, overruling the Professional Standards Review Board, was not authorized under 38 U.S.C. § 4106. It also ordered reinstatement of Dr. Giordano as a probationary employee.

On appeal, neither Dr. Giordano nor defendants challenge the district court's transfer of the back pay question to the Court of Claims. However, defendants argue that once the claim for money damages exceeded $10,000 the district court lost jurisdiction of the entire subject matter and that it was required to transfer the entire case. Defendants also argue that the district court erred in finding that the Chief

---

1. Plaintiff has filed a cross-appeal raising, *inter alia*, constitutional challenges to the review process relating to his discharge. Our ruling sustaining the district court obviates the necessity of passing on these issues.

2. In addition to naming the United States as a defendant, plaintiff sued Richard L. Roudebush, Administrator of Veterans' Affairs; John Chase, Chief Medical Director of the VA Department of Medicine and Surgery, who was directly responsible to the Administrator of Veterans' Affairs; Eugene Caffey, Jr., Chairman of a secondary review board appointed by the Chief Medical Director in Washington, D.C.; Louis Polumbo, the Chief of Surgery at the VA Hospital in Des Moines, Iowa; T. E. Corcoran, Chief of Staff at the VA Hospital in Des Moines, Iowa; Richard Bjork, Personnel Officer at the VA Hospital; Robert Pepiot, Director of the VA Hospital.

3. In ordering a rehearing before the Board, the district court noted:

> Dr. Giordano was a probationary employee with no tenure or other property interest in his position at the hospital. As a probationary employee he could be terminated without cause. . . . He would have had no right to a constitutional due process hearing but for the stigmatizing statements contained in his files. The Court has held that he is entitled to an opportunity to refute or explain those statements so that the review board will have a fair record upon which to make a decision and his opportunities for future employment will not be unconstitutionally limited.

*Giordano v. Roudebush*, 448 F.Supp. 899 (S.D. Iowa 1977) (citations omitted).

Medical Director lacked authority to discharge the plaintiff after the Professional Standards Review Board had recommended his retention. We uphold the conclusion of the district court that it had jurisdiction to grant reinstatement; we also agree with the district court's construction of 38 U.S.C. § 4106 that the Chief Medical Director of the VA lacked authority to overrule the Board's determination that Dr. Giordano should not be discharged.

Defendants claim that 28 U.S.C. § 1491 [4] grants exclusive jurisdiction over this matter to the Court of Claims. Under 28 U.S.C. § 1346(a)(2) [5] the district courts have concurrent jurisdiction with the Court of Claims under certain circumstances.

We hold the Court of Claims' exclusive jurisdiction over monetary damages exceeding $10,000 does not deprive a federal district court of jurisdiction over all equitable claims asserted in a complaint; nor does it require a party to waive his claim for monetary damages in excess of $10,000.

In an opinion outlining the history of the Tucker Act and its 1972 amendment,[6] the court in *Bruzzone v. Hampton* 433 F.Supp. 92 (S.D.N.Y.1977) was faced with an identical jurisdictional issue. Bruzzone, a former Deputy United States Marshal claimed that he had been illegally discharged and brought suit in federal district court for back pay and reinstatement. In his complaint he sought $75,000 for back pay and other damages. Because Bruzzone's claim exceeded the amount which would have allowed the district court to retain jurisdiction, the United States urged that his entire case should be transferred to the Court of Claims.

The court held that Bruzzone's monetary claim against the United States for more than $10,000 could be heard only by the Court of Claims. The district court went on to hold, however, that it was not necessary to transfer the nonmonetary claims. The court acknowledged that the Tucker Act

4. Section 1491 of 28 U.S.C. reads in part:

The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort . . . . To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.

5. Section 1346(a)(2) of 28 U.S.C. provides in part:

(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United

States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978.

6. The primary purpose of the 1972 amendment to the Tucker Act was to give the Court of Claims jurisdiction over a government employee's entire claim. *See* S.Rep. No. 92–1066, 92nd Cong., 2nd Sess. ——, *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 3116, 3117–18. The report states:

The primary class of cases where a broader remedy is needed are suits filed on a money claim by a Government employee who alleges that he was illegally discharged. At present, if the court finds that the employee was wrongfully discharged, it can award him back pay but it cannot order him reinstated to his former position. There are cases where administrative agencies refused to reinstate a wrongfully discharged employee, and it is therefore necessary for him to file an additional suit in a Federal district court to obtain reinstatement.

*See also Melvin v. Laird,* 365 F.Supp. 511, 517–18 (E.D.N.Y.1973).

had been amended in 1972 to allow the Court of Claims to order reinstatement, but ruled that the amendment did not compel the transfer of the entire case. *See also Sherar v. Harless*, 561 F.2d 791 (9th Cir. 1977); *Sherar v. Cullen*, 481 F.2d 945 (9th Cir. 1973); *Crawford v. Cushman*, 531 F.2d 1114 (2d Cir. 1976); *Neal v. Secretary of the Navy*, 472 F.Supp. 763 (E.D.Pa.1979); *Melvin v. Laird*, 365 F.Supp. 511 (E.D.N.Y. 1973); *cf. Lewis v. Carter*, 436 F.Supp. 958 (D.D.C.1977) (non-monetary relief sought was in the form of a preliminary injunction).

Defendants argue that this court's opinion in *Polos v. United States*, 556 F.2d 903 (8th Cir. 1977), dictates that this case be decided by the Court of Claims. We disagree. In *Polos* we stated that:

It is evident that Polos' principal claims are for back pay (an amount the District Court found to be $79,939.36) and for participation in the Civil Service Retirement program. While Polos contends he was entitled to reinstatement, he concedes that he could not retain the civilian technician position, because he is no longer a member of the Arkansas Air National Guard. *See* 32 U.S.C. § 709(b). He does not seriously dispute that, even if reinstated, he could be discharged on thirty days' notice. 32 U.S.C. § 709(e)(6).

*Polos' claim, then, is essentially one* against the United States *for the payment of damages.* Such a claim, when in excess of $10,000, is within the exclusive jurisdiction of the Court of Claims.

*Id.* at 905 (emphasis added) (footnote omitted).

■ In contrast to Polos, Dr. Giordano has stated from the outset of this case that his claims are primarily nonmonetary. He is seeking reinstatement and wants to clear his name. When his suit was first filed, his back pay claim was worth only $6,000, and monetary relief was clearly not his principal motive. If it had not been for the substantial delay between the time the case was first filed and its appeal to this court, the monetary claim, which is not before us, would not be so large. We thus find the *Polos* decision distinguishable.

Defendants urge that if the district court retains jurisdiction over the equitable claim, plaintiff must waive all damages over $10,-000 since to do otherwise would in effect allow him to split his claim for relief. They contend case law precludes him from doing so. We disagree. We would agree, that plaintiff would be splitting his monetary claim, if the district court retained jurisdiction over the first $10,000 and transferred the remainder to the Court of Claims. *See Washington v. Udall*, 417 F.2d 1310, 1320–21 (9th Cir. 1969); *Sutcliffe Storage & Warehouse Co. v. United States*, 162 F.2d 849 (1st Cir. 1947). However, here, the district court has transferred the entire monetary claim to the Court of Claims. Plaintiff has acquiesced in that transfer. The argument that concurrent jurisdiction taxes judicial economy and provides potential tension are not compelling. Defendants' belated jurisdictional attack, made for the first time after three years of litigation, strongly indicates they have long accepted jurisdiction of the district court over the equitable claim. Questions facing the Court of Claims, such as collateral estoppel, are not before us. In any event, we find the district court did not err in retaining jurisdiction over the issue of reinstatement.

*The Legality of the Discharge.*

■ The Chief Medical Director dismissed Dr. Giordano after the Professional Standards Review Board had recommended his retention. The controlling statute governing dismissal of probationary employees is 38 U.S.C. § 4106 which provides in pertinent part:

(a) Appointments of physicians, . . . shall be made only after qualifications have been satisfactorily established in accordance with regulations prescribed by the Administrator, without regard to civil-service requirements.

(b) Such appointments as described in subsection (a) of this section shall be for a probationary period of three years and the record of each person serving under such appointment in the Medical, . . . Services shall be reviewed from time to

time by a board, appointed in accordance with regulations of the Administrator, and if said board shall find him not fully qualified and satisfactory he shall be separated from the service.

In implementing this statute, the VA has adopted regulations governing the appointment of the Board and has set out summary procedures relating to the appearance of the physician-employee before the Board. The regulations provide that the Board should, after its review, make recommendations to the Chief Medical Director whose decision is to be final. Department of Medicine and Surgery Supplement, MP–5, Part II Chapter 4 Change 1.

■ The fundamental issue is whether the Administrator has exceeded his authority in implementing these regulations. Clearly, the Administrator has the authority to pass regulations to implement procedures under the statute. We also acknowledge that great deference must be given to an interpretation of a statute by the offices or agency charged with its administration. At the same time, the VA's promulgation of regulations cannot lend interpretative support to an unauthorized extension of its own power. *Social Security Board v. Nierotko*, 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718 (1946).

> [T]he rulemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law. "Rather it is 'the power to adopt regulations to carry into effect the will of Congress as expressed by the statute.' "

**7.** Section 4110 of 38 U.S.C. provides in pertinent part:

> (a) The Chief Medical Director, under regulations prescribed by the Administrator shall from time to time appoint boards to be known as disciplinary boards, each such board to consist of not less than three nor more than five employees, senior in grade, of the Department of Medicine and Surgery, to determine, upon notice and fair hearing, charges of inaptitude, inefficiency, or misconduct of any person employed in a position provided in paragraph (1) of section 4104 of this title. . . .
> (d) A disciplinary board, when in its judgment charges are sustained, shall recommend

*Chase v. Wald*, 557 F.2d 157, 161 (8th Cir.), cert. denied, 434 U.S. 1002, 98 S.Ct. 647, 54 L.Ed.2d 498 (1977) (quoting *Ernst & Ernst v. Hockfelder*, 425 U.S. 185, 213, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668 (1976)).

■ While the statute dealing with probationary physicians, 38 U.S.C. § 4106, is silent as to the Administrator's right to approve or disapprove the Professional Standards Review Board's determination, Congress expressly provided such a right to the Administrator under 38 U.S.C. § 4110.[7] Defendants argue the district court's ruling that the Chief Medical Director may either approve or disapprove the Board's recommendation for a tenured physician, but may not do so for a probationary one, creates an anomalous situation. On the surface this argument is appealing, but upon analysis becomes less persuasive. Section 4110 sets forth the procedures relating to Board review and the Administrator's approval or disapproval of the Board's recommendation for tenured employees when the Board recommends disciplinary action. The VA has passed detailed regulations providing a tenured employee the right of confrontation and cross examination. See Department of Medicine and Surgery, MP–5, Part II Chapter 8. Congress was obviously aware of the difference in statutory procedures for probationary employees under section 4106 and for tenured physicians under section 4110. Effect must be given to every provision of each statute; if 4110 procedures were intended to apply to probationary as well as tenured physicians, provision for Board review under 4106 would be superfluous.

to the Administrator suitable disciplinary action, within limitations prescribed by the Administrator, which shall include reprimand, suspension without pay, reduction in grade, and discharge from the Department of Medicine and Surgery of such person. The Administrator shall either approve the recommendation of the board, approve such recommendation with modification or exception, approve such recommendation and suspend further action at the time, or disapprove such recommendation. He shall cause to be executed such action as he approves. The decision of the Administrator shall be final.

Thus, we conclude the district court did not err in finding the Chief Medical Director could either approve or disapprove the Board's recommendation of disciplinary action as to tenured employees but had no authority to exercise power of review over probationary employees.[8]

 Nor do we agree that an anomalous situation is created by this interpretation. Probationary employees, those who do not qualify for civil service, may be dismissed in a summary review by the Board. As observed in *Kenneth v. Schmoll*, 482 F.2d 90, 94 (10th Cir. 1973):

> Under these regulations, notice is required, which notice is to be "brief, but in sufficient detail so that the employee will clearly understand why his services are considered deficient and/or the nature of the incident involved," with the subject of the hearing permitted to thereafter appear before the Professional Standards Board and make an oral or written statement in his own behalf, though not being permitted to confront and cross-examine witnesses or be represented by counsel.

In contrast, an employee with three years service is to be afforded a full and fair hearing, including the right to counsel, the right to confront adverse witnesses, and the right to cross-examination. *Id.* at 93. Defendants urge, however, that section 4106 applies only where the Board finds the probationary employee unqualified and recommends separation from service. The logical extension of this argument leads to the incongruous result that where the Board finds the employee satisfactory, the VA can appeal to the Medical Director, but if he is found unsatisfactory, no appeal lies for the probationary physician. We cannot believe Congress intended such a one-sided construction of the statute.

We hold the limited Board review of a probationary physician's professional competency is the only procedure available to him. As discussed, in contrast to the plenary hearing in the case of a tenured employee required under section 4110, a probationary physician is entitled to only a summary procedure. He is not entitled under the statutory scheme to any review of the Board's disciplinary action. Thus, our analysis, contrary to defendants', is that Congress intended the tenured employee to be given greater rights than a probationary employee.

Defendants' final argument is that the regulations providing the Chief Medical Director with the power of review in cases involving probationary employees is consistent with the legislative history surrounding passage of section 4106.[9] We deem the legislators' remarks were directed to unqualified physicians previously protected by civil service, and who were not providing quality medical care. The summary procedures of section 4106 governing probationary employees was obviously intended to provide review by a peer committee and upon the Board's recommendation, summary discharge without further review.

We conclude Judge Stuart did not err in his findings or construction of the statutory scheme.

Judgment affirmed.

---

8. Although we do not decide the issue of whether the Chief Medical Director has the power under section 4110 to review a determination of the Board that a tenured physician should be retained, it appears that his approval or disapproval of the Board's recommendation is limited to those instances when the Board determines that charges are sustained.

9. 91 Cong.Rec. 11660 (1945) (remarks of Reps. Domengeaux and Rankin):

> MR. DOMENGEAUX: The gentleman is correct that this legislation is proper, that it will give the Administrator an opportunity to get rid of undesirable personnel but he has always had that opportunity under civil service. . . .
>
> MR. RANKIN: What we are doing is untying the hand of the Veterans' Administration so that they can get the right kind of doctors to do the work.