920 F.2d 483
 C.H. Federal Witness, J.S. Federal Witness, L.J. Federal
Witness, W.D. Federal Witness, G.B. Federal
Witness, K.H. Federal Witness, J.K.
Federal Witness, Appellants,
v.
John SULLIVAN, Warden and his agents (Dick Clark), F.C.I.,
Sandstone, MN; Edwin Meese, III, U.S. Attorney General and
his agents; Frederick D. Hess, Director of Office of
Enforcement Operations, U.S. Dep't of Justice; Gerald Shur,
Associate Director, Office of Enforcement Operations, U.S.
Dep't of Justice; Doug Davis, Administrator, Inmate
Monitoring Section (WITSEC), U.S. Bureau of Prisons, Appellees.
T.S. Witness, Appellant,
v.
Edwin MEESE, III, Attorney General; Frederick D. Hess,
Director, Office of Enforcement Operations; Norman Carlson,
Director, Bureau of Prisons; John Sullivan, Warden, F.C.I.,
Sandstone; Richard Clark, Unit Manager, F.C.I., Sandstone,
Appellees.
John SMITH (aka)
# 02627-030, Appellant,
v.
Edwin MEESE, III, Attorney General of the United States, Appellee.
 No. 89-5490.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 10, 1990.
Decided Nov. 26, 1990.
 
 Melvin B. Goldberg, St. Paul, Minn., for appellants.
 James E. Lackner, Asst. U.S. Atty., St. Paul, Minn., for appellees.
 Before WOLLMAN and MAGILL, Circuit Judges, and HEANEY, Senior Circuit Judge.
 WOLLMAN, Circuit Judge.
 
 
 1
 Nine federal prisoners serving sentences under the federal witness protection program (the witnesses) appeal from the district court's[1] grant of summary judgment in favor of the government. We find no jurisdiction under the Tucker Act to grant the witnesses' prayer for equitable relief based on their agreement with the government. We affirm the district court's decision that double celling of these inmates does not violate the eighth amendment as cruel and unusual punishment and is not arbitrary or capricious under the due process clause of the fifth amendment.
 
 I.
 
 2
 The witnesses are incarcerated in the federal correctional institute in Sandstone, Minnesota, Unit G. They participate in the Witness Security Program (Witness Program), which the government designed to protect those witnesses whose lives may be jeopardized as a result of their testimony against organized criminals. A comprehensive discussion of the Witness Program in general and these witnesses in particular is set forth in the district court's opinion. C.H. v. Sullivan, 718 F.Supp. 726, 727-29 (D.Minn.1989).
 
 
 3
 A memorandum of understanding offers security for the witnesses in exchange for their testimony on behalf of the government. The witnesses argue that confining two witnesses in one prison cell breaches the security necessary for their protection in view of the fact that the witnesses may have personal papers and effects which, if discovered, could reveal their identity to their cell mate. Accordingly, the witnesses claim double celling is physically dangerous to them, and they seek single cell accommodations.
 
 II.
 
 4
 For the purposes of summary judgment, the district court assumed arguendo that the witnesses have a contract with the government. The district court found, however, that the breach of contract for which the witnesses requested equitable relief provided no basis for federal jurisdiction under the Tucker Act.
 
 
 5
 The Tucker Act grants the district courts original jurisdiction, concurrent with the Claims Court, over any contract claim against the United States not exceeding $10,000. 28 U.S.C. Sec. 1346(a)(2). We question whether the Tucker Act contemplates that the witnesses' memoranda of understanding constitute contracts within the meaning of the statute. The Claims Court has observed that consent to suit under the Tucker Act does not extend to every agreement with the government. Kania v. United States, 650 F.2d 264, 268, 227 Ct.Cl. 458 (1981), cert. denied, 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981). To constitute a binding contract subject to Tucker Act jurisdiction, a witness-protection agreement would have to specify the government's authority to obligate it to pay money and how such liability is to be determined. Id. The parties do not address this issue, so we, like the district court, assume for purposes of argument that an actionable contract exists.
 
 
 6
 Tucker Act jurisdiction is limited to actions for money damages; suits for equitable relief are not authorized. Lee v. Thornton, 420 U.S. 139, 140, 95 S.Ct. 853, 853, 43 L.Ed.2d 85 (1975); Richardson v. Morris, 409 U.S. 464, 465, 93 S.Ct. 629, 630, 34 L.Ed.2d 647 (1973). The witnesses argue that Lee and Richardson are distinguishable because neither case involved a contract dispute. The Act, however, "makes absolutely no distinction between claims founded upon contracts and claims founded upon other specified sources of law." United States v. Mitchell, 463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983).
 
 
 7
 The witnesses point out that in certain limited circumstances equitable relief is granted under the Tucker Act. The 1972 amendment to the Tucker Act gave the Claims Court jurisdiction to "issue orders directing restoration to office or position" persons entitled to relief when illegally discharged. 28 U.S.C. Sec. 1491. The Tucker Act allows equitable relief only when it is incidental and collateral to a monetary claim, as when a government employee seeks money damages and reinstatement of a government position. See Giordano v. Roudebush, 617 F.2d 511, 514 n. 4, 6 (8th Cir.1980); Noot v. Heckler, 718 F.2d 852, 858 (8th Cir.1983). Because the witnesses' request for a permanent injunction does not fall within the narrow category of equitable relief available under the Tucker Act, we agree with the district court that it had no jurisdiction to entertain the witnesses' petition for equitable relief on their contract claim.
 
 III.
 
 8
 The witnesses argue that double celling of Witness Program prisoners constitutes cruel and unusual punishment and thus violates the eighth amendment to the United States Constitution.
 
 
 9
 Double celling is not unconstitutional for a general prison population absent deprivation of food, medical care, sanitation, increased violence, or other conditions intolerable for incarceration. Rhodes v. Chapman, 452 U.S. 337, 347-48, 101 S.Ct. 2392, 2399-2400, 69 L.Ed.2d 59 (1981). As to inmates with need of special protection, we have found that "[w]hether an inmate in protective custody needs protection from someone with whom he is assigned to share a cell is a matter more appropriately left to the prison officials who are charged with making decisions of this nature." Cody v. Hillard, 830 F.2d 912, 915 (8th Cir.1987), cert. denied, 485 U.S. 906, 108 S.Ct. 1078, 99 L.Ed.2d 237 (1988).
 
 
 10
 The district court evaluated the alleged increase in the incidence of violence caused by double celling, the anonymity required for Witness Program prisoners, the possibility of infiltration of the program, and the alleged pervasive risk of harm to the witnesses. We find the district court's opinion thorough and well-reasoned on these issues, and we agree with the district court that the double celling of Witness Program prisoners by itself does not create a cruel and unusual punishment in violation of the eighth amendment.
 
 IV.
 
 11
 The witnesses argue that the government's practice of selecting double-celled prisoners by seniority is arbitrary and capricious and thus violates the due process clause of the fifth amendment. A Witness Program prisoner may lose seniority if he violates prison regulations, which the witnesses argue is punishment beyond the authority of the government to impose.
 
 
 12
 The district court found that the method used to select the witnesses who would be doubled celled to be a rational procedure adopted to achieve the neutral and legitimate objectives of discipline and relief from overcrowding. Some procedure for choosing which prisoners shall be double celled is necessary, and the seniority system prevents discriminatory treatment and encourages the witnesses to obey prison regulations. We agree with the district court, and we affirm its holding on this issue on the basis of its opinion.
 
 
 13
 The district court's judgment is affirmed.
 
 
 14
 HEANEY, Senior Circuit Judge, concurring in part and dissenting in part.
 
 
 15
 I respectfully dissent. In my view, the district court had jurisdiction to hear the plaintiffs' claim that the defendants had violated an agreement to house them in single cells. First, I believe that the complaint should be liberally construed and that so construed, it requests monetary as well as equitable relief. The complaint requests that the court order "such further relief as may appear to the court to be equitable and just," and plaintiffs do contend in their motion to amend their complaint that they were forced to rent safe deposit boxes at a cost to them when they were double celled and needed to have a place to protect their papers.
 
 
 16
 Second, both Noot and Giordano permit district court jurisdiction over nonmonetary claims if the equitable relief sought "has significant prospective effect or considerable value apart from merely determining monetary liability of the government." Noot, 718 F.2d at 858; Giordano, 617 F.2d at 514-15. In Giordano, a claim was made for monetary and equitable relief. The district court transferred the monetary claim to the Court of Claims, but ruled on the equitable claim for job reinstatement. This court affirmed the district court's exercise of jurisdiction over the equitable claim. 617 F.2d at 515. These cases, in my view, indicate that the Tucker Act's requirement of a claim for monetary damages should be liberally construed so as to make a forum available for substantial claims for equitable relief. Here, a substantial claim exists. If the government, in fact, made an agreement to single cell the plaintiffs, the commitment should be honored, and it will be honored only if the federal courts require that it be honored.
 
 
 17
 I concur in the majority's holdings that the plaintiffs have not shown an eighth amendment violation and that the practice of selecting prisoners for double celling by seniority is not arbitrary. I would reverse and remand with directions to the district court to determine whether, in fact, the government agreed to single cell the defendants and to award appropriate monetary and equitable relief if such an agreement exists.
 
 
 
 [1]
 The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota