**SUMMIT BANK, Plaintiff,**

v.

**U.S. DEPARTMENT OF THE TREASURY–BUREAU OF THE PUBLIC DEBT; Commissioner, U.S. Department of the Treasury–Bureau of the Public Debt; Estate of Shirley M. Starling, Deceased; James D. Starling, Individually and as Executor of the Estate of Shirley M. Starling; Linda R. Melvin; John Does 1–10; and Jane Does 1–10 and ABC Companies 1–10, Defendants.**

**Civil Action No. 97–4108(WHW).**

United States District Court,
D. New Jersey.

Oct. 30, 1998.

Faith S. Hochberg, U.S. Attorney, Newark, NJ, Susan Handler–Menahem, Assistant U.S. Attorney, Newark, NJ, for Defendant U.S. Department of the Treasury.

David B. Katz, P.C., Livingston, NJ, for Defendants Estate of Shirley M. Starling, and James Starling, individually and as Executor of the Estate of Shirley M. Starling.

Gregg S. Sodini, Cuyler Burk, Parsippany, NJ, for Plaintiff Summit Bank.

## OPINION

WALLS, District Judge.

Federal defendant, the U.S. Department of the Treasury ("Treasury") moves to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim. The nonfederal defendants are the estate of Shirley M. Starling and James Starling (individually and as executor of the estate) and Linda Melvin. Plaintiff Summit Bank ("Summit") has filed a cross motion for summary judgment in its favor. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court considers these motions without oral argument. For reasons that follow, defendant Treasury's motion is granted. Plaintiff's motion for summary judgment is denied. The case is transferred to the United States Court of Claims.

### Factual Background

Over a period of years, David R. Starling purchased one-hundred and twenty Series EE and E United States savings bonds in various denominations. His wife's name, Shirley M. Starling, was inscribed on twenty-one of the bonds as the payee upon his death and on seventy-five of the bonds as an alternative payee. Compl. ¶¶ 18, 19. Mrs. Starling's name was inscribed on ten of the bonds as the original purchaser and alternative payee. *Id.* ¶ 10. The names of David R. Starling and Rose Lee Starling, his daughter, were on fourteen of the bonds as alternative payees. *Id.* ¶¶ 8, 19.

David R. Starling died on September 29, 1989. Sometime in November 1991, Shirley M. Starling went to live with her daughter, Linda Melvin. At this time, she was in possession of the aforementioned savings bonds. According to Linda Melvin's certification, in May 1992, she was asked by her mother to help cash the bonds. Melvin Certif. ¶ 5. Such assistance was required because Mrs. Starling's left hand had been partially crippled by a stroke. *Id.*

On May 12, 1992 fourteen savings bonds registered to "David R. Starling or Rose Lee Starling" in the amount of $2,576.24 were paid by United Jersey Bank (the former name of Summit Bank) upon requests for payment signed "Linda R. Melvin, POA." [1] Hawes Declaration, ¶¶ 4, 6. Five years later, on October 9, 1997, $3,438.40 was paid to Rose Lee Starling by the Department of the Treasury, Bureau of Public Debt ("Public Debt") to satisfy the obligation of those bonds. Hawes ¶ 6.

On May 13, 1992, the bank redeemed fifty-eight savings bonds registered in the co-ownership of David R. Starling and Shirley M. Starling. Compl. ¶ 19; Melvin Declaration ¶¶ 6, 7; Hawes Declaration ¶¶ 4, 7. Linda Melvin had printed the name of Shirley M. Starling on the back of these bonds and signed the payment requests "Linda Melvin, POA." *Id.* On June 15, 1992, the bank paid twenty-one savings bonds registered "David R. Starling POD Shirley M. Starling," also upon requests for payment signed "Linda R. Melvin POA." Melvin Declaration ¶ 9; Hawes Declaration ¶¶ 4, 7. On August 3, 1992, the bank redeemed twenty-seven savings bonds registered "David R. Starling or Shirley M. Starling" upon requests signed "Linda R. Melvin POA." Compl. ¶¶ 21, 29; Melvin Declaration ¶ 8; Hawes Declaration ¶¶ 4, 7.

Shirley M. Starling died on December 19, 1996. The executor of her estate, James D. Starling—Shirley's son and Linda Melvin's half-brother—lodged an inquiry into the status of the bonds with Public Debt. Compl. ¶ 31; James Starling Certif. ¶ 3. Public Debt determined that the bond redemptions using the power of attorney and endorsements by Linda Melvin, being a person not named on the bonds, violated the applicable regulations. On October 9, 1997, Public Debt issued a check of $24,643.88, the amount of these redemption transactions, payable to James D. Starling as the executor of the estate of Shirley M. Starling. Hawes Declaration ¶ 7.

Public Debt then wrote to the bank charging that the bank's redemption of the bonds violated Section 321.9(c) of the Department of the Treasury Circular, No. 750, as revised. Compl. Ex. A. The letter requested reimbursement by the bank of the government's payments to Rose Lee Starling and the estate of Shirley M. Starling. *Id.* The bank replied, contradicting certain factual allegations made in the letter. The bank also requested a review of Public Debt's decision regarding the illegality of the redemptions and more information. Compl. Ex. B. In July 1997, Public Debt finally decided to charge the bank with liability for the redemption transactions, which amount had grown to $27,337.98 (interest and administrative costs added).

The bank refused to reimburse the government and instead has brought this complaint against Public Debt, the Starlings, Linda Melvin, and certain fictitious defendants. Count One of its complaint seeks a determination reversing the findings and conclusions of Public Debt, declaring that the actions taken by the bank to redeem the subject bonds complied with applicable law and regulations, or declaring that the applicable regulations are arbitrary and capricious, declaring that Summit has no liability, permanently enjoining Public Debt from offsetting or otherwise seizing any property of the bank, and permanently enjoining all defendants from prosecuting any further claims or otherwise seeking to recover money with regard to the bonds. Counts Two, Three and Four request permanent injunctions, enjoining the Starlings, certain beneficiaries of the Starling estate and Linda Melvin from bringing any further claims or otherwise seeking to recover money in connection with the bonds. The bank also seeks indemnification from these defendants for any amounts that it may be liable, ultimately, to Public Debt. Count Five

---

1. All references to "POA" mean Power of Attorney.

requests that the Court immediately and temporarily enjoin Public Debt from seizing any bank property and from making any additional payments or substitutes for the bonds. Count Five also demands that the non-federal defendants be immediately and temporarily restrained from cashing any checks or redeeming any other instruments related to the bonds, and the freezing of assets of other defendants to the extent of any redemption payments.

### Analysis

**1. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim**

Section 1491 of 28 U.S.C. provides that: (a)(1) The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort ...,

and 28 U.S.C. § 1346 declares:

(a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of:

...

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States ....

■ The United States cannot be sued without its consent. See *Block v. North Dakota, ex. rel. Bd. of Univ. and School Lands*, 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d

840 (1983). A court does not have jurisdiction over the United States unless its sovereign immunity has been waived. *See United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Waivers of sovereign immunity are to be "strictly observed, and exceptions thereto are not to be lightly implied." *See Block*, 461 U.S. at 287, 103 S.Ct. 1811. A suit is against the [government] if "the judgment sought would expend itself on the public treasury or domain ... or if the effect of the judgment would be 'to restrain the government from acting, or compel it to act.' " *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963).

Plaintiff Summit asserts that there is a waiver of sovereign immunity under 5 U.S.C. § 702 and within the federal question jurisdictional grant of 28 U.S.C. § 1331 such that this Court has jurisdiction over Summit's claim.[2] The plaintiff further argues that it is not making a claim for monetary damages against the U.S. government, as forbidden by 28 U.S.C. § 1346(a)(2) (the "Tucker Act"), but instead, a claim for injunctive and declaratory relief. The plaintiff concedes that it cannot make such a monetary claim because the government has not taken and is not in possession of any money belonging to Summit.

Defendant Public Debt contends that this Court does not possess subject matter jurisdiction over any of the plaintiff's claims because under 28 U.S.C. § 1491(a)(1) and the Tucker Act, the United States Court of Claims ("the Claims Court") has exclusive jurisdiction over contract claims against the United States in amounts exceeding $10,000. Public Debt reasons that because Summit and other paying agent banks conduct redemption transactions pursuant to agreements with the government and the subject amount here exceeds $10,000, the Claims Court has exclusive jurisdiction.

■ Several courts have held that the Tucker Act grants exclusive jurisdiction over monetary claims against the United States in excess of $10,000 to the Claims Court. *See,*

---

**2.** Plaintiff Summit had originally claimed a waiver of sovereign immunity under 28 U.S.C. § 1352, but conceded in its brief that there is no

subject matter jurisdiction over the defendant government under that statute.

e.g., *Hahn v. United States,* 757 F.2d 581 (3d Cir.1985); *Minnesota by Noot v. Heckler,* 718 F.2d 852 (8th Cir.1983); *Giordano v. Roudebush,* 617 F.2d 511 (8th Cir.1980). The situation is not as clear as to which court has jurisdiction over related claims for equitable relief.

In *Giordano,* a physician was discharged from his position in a veteran's administration hospital. 617 F.2d at 513. He filed suit in district court, alleging denial of due process and sought an award of back pay and reinstatement. *Id.* While the district court transferred the damage claim to the Claims Court, it ordered the physician's reinstatement. *Id.* On appeal, the circuit court concluded that the district court had jurisdiction to grant the reinstatement, notwithstanding the Claims Court's exclusive jurisdiction over any monetary damages exceeding $10,000. *Id.* at 513–14. The appellate court reasoned that the plaintiff's claim was primarily nonmonetary. *Id.* at 515. It also noted that when the plaintiff initiated his suit, his back pay claim was worth only $6,000 and below the Tucker Act dollar amount threshold. *Id.* The court distinguished those circumstances from when the plaintiff's claim for equitable relief was "essentially one against the United States for the payment of damages." *Id.*

In *Minnesota,* the Department of Health and Human Services ("HHS") of the federal government disallowed certain reimbursements to the State of Minnesota under a federal Medical Assistance Program. *Minnesota,* 718 F.2d at 855. HHS decided to recover the full amount of funds paid to Minnesota under that program by offsetting federal financial participation in a supplemental grant to the State. *Id.* The *State* sought review of HHS's decision in the District Court by an action for declaratory and injunctive relief, and restoration of the grant money withheld by HHS. *Id.* at 856. The District Court granted summary judgment to the State, holding that HHS acted outside the scope of its authority, and ordered the return of the disallowed funds. *Id.* On appeal, the Circuit Court affirmed only the jurisdiction of the district court over the equitable relief claim, ruling that "if the declaratory or injunctive relief a claimant seeks has significant prospective effect or considerable value apart from merely determining monetary liability of the government, the equitable relief sought is, paramount and the district court may assume jurisdiction over the nonmonetary claims." *Id.* at 858. Yet "claims essentially seeking monetary relief over $10,000 fall within the Claims Court's exclusive jurisdiction which may not be evaded by framing a claim for injunctive relief or by requesting the exercise of mandamus jurisdiction." *Id.* at 860, fn. 12.

The present plaintiff relies heavily on the *Hahn* case. There, the National Health Service Corps (the "NHS Corps") of the Public Health Service ("PHS") provided scholarships to eligible students in professional health degree programs who had agreed, by written contract, to serve a period of military service upon completion of the program. *See Hahn,* 757 F.2d at 583. Before September 15, 1981, scholarship recipients under the NHS program who became medical or dental officers of the PHS Commissioned Corps were entitled to receive, as part of their basic pay, "constructive service credit" of up to four years. *Id.* at 584.

On September 15, 1981, the Defense Officer Personnel Management Act of 1980, P.L. No. 96–513, 94 Stat. 2835 ("DOPMA") repealed the credit allowance. *Id.* DOPMA, however, retained provisions by which certain participants in the program could still receive those credits. *Id.* The terms of the saving provisions, however, did not include participants who, although in the Scholarship program before September 15, 1981, were and would not be appointed officers of the PHS Commissioned Corps until after that date. *Id.* Two such persons brought a class action suit for declaratory, injunctive and monetary relief. *Id.* at 585. The district court permanently enjoined the government from denying them and their class members constructive service credit, ordered that they be given credit retroactive to their date of commission, and awarded the plaintiffs back pay. *Id.* On appeal, the Court of Appeals for the Third Circuit found that the district court lacked the power to award the monetary relief, but concluded that the plaintiffs' claims for injunctive and declaratory relief

had been properly before it. *Id.* The court reasoned that "determination of the non-monetary claims may or may not determine whether plaintiffs are entitled to monetary relief, 'and, clearly will not determine the amount of such relief ....'" *Id.* at 589 (quoting *Neal v. Secretary of the Navy,* 472 F.Supp. 763, 774 n. 22 (E.D.Pa.1979), *rev'd on other grounds,* 639 F.2d 1029 (3d Cir. 1981)).

Each of the aforementioned cases can be effectively distinguished from the claims of plaintiff Summit. In *Giordano,* the claim for reinstatement was independent of the damage and back pay claims. 617 F.2d at 515. There the plaintiff's request for reinstatement was the most significant part of his complaint and his claims were primarily nonmonetary. 617 F.2d at 515.

In *Minnesota* the court found that the equitable relief sought would affect not only the money withheld from the State, but also past and future claims, which were much larger than the amount at stake in the monetary portion of the case. 718 F.2d at 859. The declaratory relief sought had a "conspicuous impact beyond establishing a right to the disallowed funds" and that this "prospective, independent significance ... makes it ... the primary relief sought by the State." *Id.* The district court had jurisdiction over such nonmonetary claims. *Id.*

*Hahn*'s plaintiffs sought a judicial ruling that the government's actions were unconstitutional, arbitrary and discriminatory. 757 F.2d 581, 585 (3d Cir.1985). The court found that its jurisdiction was dependent necessarily upon the resolution of constitutional issues, observing that "only in the face of the clearest Congressional intentions could the powers of this court to come to grips with claims of [constitutional] dimension be ousted by the availability of monetary relief from the Court of Claims." *Id.* at 590 (quoting *Melvin v. Laird,* 365 F.Supp. 511 (E.D.N.Y.1973)). The constitutional question gave the sought equitable relief an independent value beyond a determination of monetary obligations. There is no constitutional question in these proceedings.

■ The *Hahn* court also found that the determination of the nonmonetary claims

"may or may not determine whether plaintiffs are entitled to monetary relief" and that such determination "clearly will not determine the amount of such relief." 757 F.2d at 589. Presently, the equitable relief sought, if granted, would both determine entitlement to monetary relief and the amount of such relief. This infirmity is not cured by the plaintiff's demand for a finding that the governmental regulations are arbitrary and capricious, constitute an abuse of discretion and exceed the Bureau's statutory authority. While this particular pleading appears to bring Summit's claim closer to the pleadings of the *Hahn* plaintiffs, the circuit court emphasized that their decision was not intended to derogate from the Claims Court's sphere of exclusive jurisdiction by allowing a plaintiff to "create district court jurisdiction by artful pleading." 757 F.2d at 590. Under the present circumstances, jurisdiction in the district court is not proper where, as here, "the [equitable] relief sought simply establishes the ... legal entitlement to the principal remedy, and does not expand it in any way." *Minnesota,* 718 F.2d at 860 n. 13 (quoting *Wingate v. Harris,* 501 F.Supp. 58, 60–62 (S.D.N.Y.1980)).

Unlike the above cases, the equitable relief sought here does not meet the *Minnesota* standard of having "considerable value apart from merely determining monetary liability of the government." The injunctive and declaratory relief sought by Summit would do little more than directly affect both the validity and amount of the defendants' right to money. The primary relief wished by plaintiff Summit is a finding that it does not owe the disputed dollar amount to the government. The claim for equitable relief in which this request has been cloaked has neither the independent value of the equitable relief sought in *Giordano,* the prospective significance of the equitable relief pursued in *Minnesota,* nor the constitutional import of the equitable relief discussed in *Hahn.* Rather, it is "merely incidental to the primary relief requested." *Compare Wingate v. Harris,* 501 F.Supp. 58, 62 (S.D.N.Y.1980).

■ Plaintiff Summit also argues that, in any event, this is not a monetary claim be-

cause Public Debt has taken no money directly from Summit. Rather, Summit brings this action out of concern that Public Debt will, in choosing among its options, obtain the disputed amount by offsetting Summit's account in the Federal Reserve Bank. It is not necessary for the Court to address any ripeness issues related to this argument because it fails for another reason. To refuse to pay the demanded money and seek from this Court an approval (injunctive and declaratory) of such refusal is tantamount to asking the Court to decide the merits of the monetary claim. A "claim that is essentially seeking monetary relief over $10,000 fall[s] within the Claims Court's jurisdiction, and this jurisdiction cannot be evaded by framing a claim for injunctive relief . . . ." See Minnesota, 718 F.2d at 860 n. 13.

■ An injunction is not appropriate when the injury can be redressed by an award of damages. Id. While it is not clear what damage Summit may have suffered, that issue can be adequately resolved in the Claims Court. To allow otherwise would permit litigants to strategically plead causes of actions in order to allocate cases between the district courts and the Claims Court based, not on the law, but on their ability to characterize the facts and the pleadings. Such would not only be an inefficient burden on the judicial system, but also cause mischievous uncertainty and confusion in this area.

The plaintiff further claims waivers of sovereign immunity by the government under 5 U.S.C. § 702 and the federal jurisdictional grant of 28 U.S.C. § 1331. Sovereign immunity of the United States is waived in the district court under 5 U.S.C. § 702 (1982) only for claims against a federal agency or its officers which seek relief "other than money damages, provided the relief sought is not expressly or impliedly forbidden by another statute that grants consent to suit." See United States v. Mitchell, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); Jaffee v. United States, 592 F.2d 712, 718–19 (3d Cir.

1979). Because the relief sought by plaintiff Summit in this action is primarily monetary, it is expressly forbidden by the Tucker Act. There is no waiver of sovereign immunity here under § 702.[3]

As already found, the relief sought is essentially a non-independent determination of the plaintiff's monetary obligation to the government. Such a determination has no significant prospective value and will not expand the plaintiff's rights. It is yet another attempt to frame a request for monetary relief. In the absence of an express or statutory waiver of sovereign immunity, a petition in district court for equitable relief against the government must have some independent value. If this independent value is lacking, the Claims Court has exclusive jurisdiction over the entire matter. This District Court is not empowered to decide the merits, but in the interests of justice that this matter be resolved expeditiously, the Court transfers this cause to the Court of Claims. Compare Wingate v. Harris, 501 F.Supp. 58, 62 (S.D.N.Y.1980) (citing Peltzman v. Smith, 404 F.2d 335, 336 (2d Cir.1968); 28 U.S.C. 1406(c)).

### Conclusion

For the foregoing reasons, the Court grants the defendant's motion to dismiss for lack of subject matter jurisdiction. The Court denies the plaintiff's motion for summary judgment. The Court further orders that the case be transferred to the United States Court of Claims.[4]

**SO ORDERED.**

### ORDER

This matter comes before the Court upon defendants U.S. Department of the Treasury's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. Plaintiff Summit Bank has filed a cross motion for summary judgment.

---

3. This determination, as well as other issues developed in this opinion, forego the need for a discussion of waiver of sovereign immunity under the federal question jurisdictional grant of 28 U.S.C. § 1331.

4. Both the plaintiff and the non-federal defendants agree that once Public Debt's motion to dismiss is granted, this Court has no independent basis for jurisdiction over the non-federal defendants.

Upon consideration of the submissions of the parties and for the reasons stated in the accompanying opinion, the Court grants the defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to 28 U.S.C. §§ 1491(a)(1) and 1346(a)(2). The Court denies the plaintiff's cross motion for summary judgment. The Court further orders that the entire case be transferred to the United States Court of Claims.

**SO ORDERED.**